1  Howard  Willis
2  2525 County Road 218
3  Cheyenne  WY 82009

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

SEP 23 2010  2·2⁶ʳ
                    ̶x̶

Stephen Harris, Clerk
Cheyenne

4                  UNITED STATES DISTRICT COURT
5                      DISTRICT OF WYOMING

| | |
|---|---|
| **Howard  Willis** | Case # <u>10-CV-173-D</u> |
| Plaintiff, | |
| vs. | **MORE DEFINITE STATEMENT** |
| **Nationwide Advantage Mortgage** | |
| Defendant | |

Date: Sept. 22, 2010

7       Comes now  Howard    Willis , hereinafter referred to as "Petitioner," and moves the

8  court for relief as herein requested:

9                              **PARTIES**
10      Petitioner is Howard    Willis , 2525 County Road 218  Cheyenne  WY 82009.  Currently

11  Known Defendant(s) are/is:  Nationwide Advantage Mortgage , 1100 Locust St. Dept 2009 , IA

12  50391, by and through its attorney .

13                          **STATEMENT OF FACTS**
14      Plaintiff and seller engaged the services of Benchmark Financial Services, as a mortgage

15  broker, hereinafter referred to as "Broker," to assist Plaintiff and seller in the sale of the property.

16      Plaintiff was referred to as Draper & Kramer Mortgage Corporation, hereinafter referred

17  to as "Lender," by Broker for the purpose of financing the intended sale of the property.

18      Lender engaged the services of Brown Appraisal Services LLC, hereinafter referred to as

19  "Appraiser," to prepare an appraisal of the then current value of the property.

20      Lender engaged the services of Summit Title Services, hereinafter referred to as "Closing

21  Agent," to perform the closing on the sale of the property.

22      On the 2nd day of February 2008, Plaintiff entered into a contract loan with Lender, said

23  contract is hereinafter referred to as the "note."

24      On the day of closing on the property, Closing Agent provided the Truth in Lending

25  Statement and Housing and Urban Development Form 1, otherwise known as the "settlement

26  statement."

27      At closing on the property, Lender assessed fees as listed on the settlement statement.

28      The fees assessed on the settlement statement were as follows:

More Definite Statement                                              1 of 23

| | | |
|---|---|---|
| 801 | Loan Origination Fee | $2,420.95 |
| 803 | Appraisal | $350.00 |
| 809 | VA Funding Fee | $5,095.50 |
| 901 | Interest | $1,418.58 |
| 903 | Hazard Insurance Premium | $1,000.50 |
| 1001 | Hazard Insurance | $1,062.00 |
| 1004 | County Property Taxes | $905.55 |
| 1101 | Settlement fee | $125.00 |
| 1105 | Document Printing Fee | $25.00 |
| 1108 | Title Insurance | $483.75 |
| 1111 | Courier Fees | $25.00 |
| 1201 | Recording Fee | $76.00 |
| 1205 | Record Homestead Waiver | $8.00 |
| 1303 | Foundation Inspection | $250.00 |

29

30    The fees assessed on the settlement statement were added to the principal on the note and

31    interest was charged to Plaintiff on said amounts.

32    Plaintiff provided to Lender, at the time of the consummation of the note, a document

33    witch established a lien against the property.

34    Said lien document specifically stated that it was intended to protect Lender from loss if

35    Plaintiff failed to abide by the promises made in the note.

36    Within days after the consummation of the above referenced note, Lender traded the note

37    to an investor, hereinafter referred to as "Initial Investor," for consideration accepted (identity of

38    Initial Investor, at the time of the filing of this complaint is unknown to Plaintiff, but will be

39    provided subsequent to discovery).

40    At the sale of the note to Initial Investor, Lender bi-furcated the note and lien by retaining

41    possession of the lien while transferring possession of the note to Initial Investor.

42    Plaintiff was not noticed of said subsequent sales of the note.

43    The note was subsequently sold repeatedly to other parties who failed to properly register

44    said sales with the court recorder's office in the county in which the property lies.

45    After sale of the note, Lender became the servicer of the note, in that Lender contracted

46    with the Initial Investor who was the real party in interest on the note at the time of sale to collect

47    the monthly payments made on the note.

48                    **STATEMENT OF FACTUAL ACCUSATION**

49    Plaintiff alleges and is prepared to prove at trial each of the following:

50    *FRAUD BY LENDER*

51    Lender conspired with the Broker, to induce Agent to violate Agent's fiduciary duty to

52    Plaintiff while acting as an agent for Plaintiff in securing funds to purchase a residential

53    property. *(Since all actors in a conspiracy act in pari delicto, and, thereby, are equally culpable*

54   *for the acts of each, Plaintiff did not name Agent, Appraiser, Underwriter, Closing Agent, et, as*
55   *said actors are not necessary parties.   In the interest of judicial economy, Plaintiff only*
56   *specifically named the party presently claiming agency and standing to enforce the note. If said*
57   *defendant has reason to believe that others are liable to defendant, defendant is certainly free to*
58   *cross-complain against said actors in order to lessen the potential claim against defendant.)*

59   Lender, in an act of fraud, represented the property, the current real estate market, the
60   loan product of Lender, and other conditions of the prospective purchase as far more favorable
61   than they actually were at the time said representations were made.  Lender knew, or should have
62   known, that said representations were not accurate or were misleading.   Lender made said
63   representations to Plaintiff with the intent that Plaintiff make a decision to purchase.  Plaintiff did
64   not have equal access to information as Lender as Plaintiff was not a real estate professional.
65   Plaintiff had reason to trust Lender as Lender was licensed to do business.   Said license was
66   sufficient to give Plaintiff a reasonable expectation of good faith and fair dealings on the part of
67   Lender.  Lender knew, or should have known that if Plaintiff had full disclosure of all the facts
68   Plaintiff would have made a different decision than the decision Plaintiff made.  Plaintiff was
69   subsequently harmed by the decision Plaintiff was fraudulently induced to make by Lender.

70   ### *FAILED TO MAKE CONSPICUOUS DISCLOSURES*
71   Broker, Appraiser, Closing Agent, and Lender failed to make all disclosures to Plaintiff
72   clearly and conspicuously as required by 12 CFR 226.17(a)).  The above referenced defendants
73   crafted disclosures in turgid and confusing language, laced with undefined terms of art (legalese)
74   and grouped with many unnecessary and confusing documents for the purpose of rendering the
75   disclosures unintelligible to a reasonable person of ordinary knowledge and understanding of the
76   English language.  Lender failed to disclose to Plaintiff that the words and phrases used in the
77   documents put before Plaintiff carried meanings not consistent with those terms as used in
78   normal common speech, but rather were therein used as terms of art, having special legal
79   definitions not made clear to Plaintiff.   The above referenced failure defrauded Plaintiff by
80   effecting a lack of full disclosure to Plaintiff which unduly induced Plaintiff to enter into the
81   contract herein referred to as the note.

82   **i.   Truth In lending statement not timely**
83   Lender failed to provide a Truth in lending statement at least three days before closing in
84   violation of 12 CFR 226.31(c)(1).  Plaintiff alleges that the failure on the part of Lender to provide
85   the required disclosure was an act in concert with other acts perpetrated here intended to mislead
86   and defraud Plaintiff.  Plaintiff understands the statutory limitations on the court concerning the

87    assessment of civil penalties under the Truth in Lending Act.  Plaintiff is not so concerned with
88    the acts of Lender as they relate to the imposition of said penalties, but rather, as they relate to a
89    pattern of lack of intentional non-disclosure intended to defraud Plaintiff.

90         **ii.    Terms for the note changed at closing**

91         The terms for the note were changed at closing without prior notice to Plaintiff in
92    violation of 21 CFR 226 (c)(1)(i).  When Plaintiff objected to the trustee at closing, Plaintiff was
93    told to either take it or leave it.  This was a deliberate act on the part of Lender to induce Plaintiff
94    to so arrange Plaintiff's affairs so that the purchase of the property became a personal and
95    financial necessity, thereby, placing improper undue pressure on Plaintiff in order to force
96    Plaintiff to accept conditions Plaintiff would never have agreed to absent the fraudulent failure to
97    timely disclose said changes.

98         **iii.    Disclosures did not reflect terms**

99         The disclosures to provided Plaintiff by Lender did not accurately reflect the closing
100   amounts and did not clearly state that the disclosures were estimates in violation of 12 CFR
101   226.31(d)(1).   Lender, in making verbal and written disclosures to Plaintiff, gave partial
102   disclosure, but failed to give full disclosure in that Lender failed to disclose that the disclosures
103   were only estimates.  It is the further allegation of Plaintiff that said disclosures were deliberately
104   misconstrued in a pattern of conduct engaged in by the broker, appraiser, underwriter, trustee,
105   and lender for the purpose of inducing an unsophisticated consumer to enter into a predatory loan
106   product on which Lender intended to foreclose.

107        **iv.    Per Diem interest not accurately disclosed**

108        Lender failed to provide documentation to show that the calculation of the per diem
109   interest was true and accurate in violation of 12 CFR 226.3(a)(ii).

110   ***IMPROPERLY CHARGED FEES***

111        Lender, at closing, charged fees to Plaintiff that were totally false in some instances and
112   intended to be included in the finance charge in other instances.

113        **i.    False Fees**

114        Lender charged fees to Plaintiff for services never provided and that Lender added said
115   false fees to the principal of the note with the intention, not only of collection the fees
116   improperly, but also, in as much as any extra fee added to the principal at closing will effectively
117   be the last amount paid, Lender intended to collect interest on said fees for the full term of the
118   note.  It is a common practice of lenders to add what is called "junk" fees to the Housing and

119   Urban Development Form 1 document hereinafter referred to as "settlement statement." *(see*
120   *attachment labeled Exhibit B)*   Plaintiff, subsequent to the discovery of documentation from
121   Lender, Plaintiff will prove that certain of the fees assessed on the settlement statement lack
122   documentation as they were never performed or paid for by Lender and, therefore, the
123   assessment of said fees were acts of fraud against Plaintiff.

124       **ii.    Fees not allowed to be assessed on settlement statement**

125       Lender assessed fees to Plaintiff at closing as listed on the settlement statement.  As
126   indicated above, certain of these fees were intended to be part of the finance charge and were
127   intended to be paid from the interest charged to Plaintiff.  Instead of absorbing said costs as the
128   normal part of doing business, Lender improperly assessed said charges to Plaintiff, added said
129   charges to the original principal, and intended to charge plaintiff interest on said charges for the
130   full term of the note.

131       Plaintiff was induced to accept the fees a genuine and proper because of the licensed
132   status of the closing agent.  Plaintiff, by virtue of said licensed status, had cause to hold a
133   reasonable expectation of good faith and fair dealings from Defendant agent, Lender, and closing
134   agent.

135       The amount of overpayment on the note Lender intended Plaintiff pay over the term of
136   the note would be in the amount of $145,608.75.

137       Said improper charges include, but are not limited to charges by third parties which are
138   not otherwise excluded under 12 CFR 226.4(a)(1)(i)).   Lender required the use of said third
139   parties as a condition of or an incident to the extension of credit which included, but is not
140   limited to charges for appraisers, inspectors, underwriters, and others to be determined
141   subsequent to discovery.  Said fees, as demonstrated above, were forbidden to be charged to
142   Plaintiff.  While the civil penalty for said violations of the Truth in Lending Act appears to have
143   ran, and even if the court discounts equitable tolling of the statute of limitations for the
144   imposition of said penalties, the charges to Plaintiff that were added to the principal which
145   Plaintiff was intended to pay and which improperly increased the cost to lender as indicated
146   above, amount to a criminal fraud against Plaintiff.  Regardless of the covenants of the contract,
147   the above referenced false fees ring in tort against Lender.

148   *CONSPIRACY TO FALSE FEES*

149       It is the further allegation of Plaintiff that Lender charged false fees at closing which
150   were added to the original principal on which interest was charged.  It was intended that above
151   referenced costs be considered the normal part of doing business and be absorbed in the finance

152    charge.  Instead, Lender added said fees to the head of the note, then used said fees to bribe

153    Broker to up sell *(convince the buyer to accept an artificially high priced loan product)* the note

154    to Plaintiff, thereby, charging Plaintiff for the bribes Lender used to defraud Plaintiff.   Instead of

155    absorbing said fees in the finance charge, Lender intended to charge interest on said fees for the

156    full term of the note.  Plaintiff was harmed by said act by being charged extra fees, thereby,

157    increasing the cost of the note.

158    *CONSPIRACY BETWEEN LENDER AND APPRAISER*

159    Lender conspired with Appraiser to present an inaccurate appraisal and false

160    representation of the true value of the Property, in order to induce Plaintiff into entering into a

161    predatory loan with Lender.    Appraiser's inaccurate appraisal defrauded Plaintiff by giving

162    Plaintiff the false impression that the property was more valuable than it actually was.  Lender

163    knew, or should have known, that Plaintiff did not have equal access to information concerning

164    the value of the property as Lender would not allow Plaintiff to provide a neutral appraisal of the

165    property.   Lender knew, or should have known, that Plaintiff would have made a different

166    decision if Plaintiff were given a true and accurate appraisal of the property.

167    *APPRAISER*

168    Defendant(s), specifically demanded that the appraiser of their choice be used.  Said

169    appraiser, because of mechanizations of the mortgage industry, works at the pleasure of the

170    mortgage and the borrower is not allowed to use an outside appraiser.  This requirement of the

171    use of appraisers who work exclusively at the behest of the Lender creates a situation that an

172    reasonable person of ordinary prudence would expect to unduly influence the appraiser to

173    produce appraisals which served the Lender's best interest.  In the instant cause, the appraiser

174    improperly appraised the property in order to unduly influence Plaintiff to believe the loan was

175    equitable.

176    *UNDISCLOSED CLOSING AGENT RELATIONSHIP*

177    Defendant(s) added closing agent charges to the principal of the note, for services

178    required by the Lender and made by third party vendors who conducted the loan closing (12 CFR

179    226.4(a)(2)(i)).

180    Closing agent was selected by Lender.  Plaintiff was not adequately advised that Plaintiff

181    could select a closing agent of Plaintiff's choice.  Consequent to the above referenced failure to

182    give clear and conspicuous disclosures, Plaintiff was induced into accepting the closing agent as

183    a neutral and trustworthy professional.

184    By failing to fully disclose the ongoing financial relationship between the closing agent
185 and the Lender, Lender defrauded Plaintiff by non-disclosure.

186 *CONSPIRACY BETWEEN LENDER AND UNDERWRITER*

187    Lender further conspired with Underwriter in order to mislead Plaintiff by an improper
188 approval of a mortgage agreement that failed to meet the requirements of the Real Estate
189 Settlement Procedures Act, Truth in Lending Act, and various and sundry local, state, and federal
190 consumer protection laws.  Said violations as stipulated above, included the assessment of false
191 fees at closing.  The underwriter, acting as the alter ego of Lender, under the guise of checking
192 the note for propriety and correctness, unduly influenced Plaintiff into accepting all the fees
193 charged at closing as true, valid, and accurate.  The underwriter, acting as the alter ego of
194 Lender, acted with culpable knowledge of the impropriety of the false fees charged to Plaintiff,
195 or the underwriter acted with gross negligence.  The underwriter, acting as the alter ego of
196 Lender, defrauded Plaintiff by failing to disclose to Plaintiff that the fees charged to Plaintiff
197 were improper and in violation of standing law.  Lender knew, or should have known, that
198 Plaintiff would have made a different decision had underwriter done a proper job of checking the
199 legality and propriety of the note.  Plaintiff was harmed by the negligence or fraud of
200 underwriter.

201 *CLOSING AGENT ALLOWED FALSE FEES*

202    Closing Agent, acting as trustee, failed to notify Plaintiff that many, if not all fees
203 charged to Plaintiff were either totally false, unauthorized to be charged, or included undisclosed
204 markups on amounts charged by third party vendors.  Closing Agent, acting as trustee, allowed
205 insufficient time for Plaintiff to read and understand the large stack of documents put before
206 Plaintiff at closing.  Closing Agent, acting as trustee, took unfair advantage of the trust
207 engendered in Plaintiff by Closing Agent's position as trustee and failed to give Plaintiff full
208 disclosure if the improper nature of the fees charged at closing in violation of 12 CFR
209 226.4(a)(1)(ii)).

210 *NOTICES WITHHELD TO DEFRAUD PLAINTIFF*

211    Lender, at and before settlement, failed to provide statutorily mandated notices to
212 borrower, by failing to provide each of the specific notifications listed herein, to include but not
213 limited to:

214    No HUD 1 Booklet provided within three days after the loan application was made to the
215 Lender;

216    Good Faith Estimate not timely provided;

217    Good Faith Estimate not accurate within specified limits;

218    No holder rule warning in note;

219    Right to rescind not clearly made;

220    Principal and interest on note not clearly highlighted or readily visible;

221    Failed to include the FTC Holder Warning (16 CFR 433) in the note document.

222    ***UNDISCLOSED MARKUP***

223    Lender, at closing, while acting in concert and collusion with Underwriter andn Closing
224    Agent, assessed  undisclosed markups to Plaintiff over the amounts charged by vendors who
225    performed services connected with the loan closing and added said undisclosed markups to the
226    principal on which the above referenced defendants intended that Plaintiff  pay interest for the
227    term of the note (12 CFR 226.4(a)(2(ii)).

228    ***BROKER FEE IMPROPERLY ADDED TO PRINCIPAL***

229    Lender, acting in concert and collusion with Underwriter and Closing Agent, assessed a
230    broker fee to Plaintiff at closing in the amount of $2420.95, and added said amount to the
231    principal of the note for which Defendant(s) intended to charge Plaintiff interest for the full term
232    of the note(see Special Rule 12 CFR 226.4(a)(3)).

233    ***CONSPIRACY BETWEEN CLOSING AGENT AND LENDER***

234    Closing Agent conspired with Lender to create a condition at closing intended to deny
235    Plaintiff full disclosure by contriving to pressure Plaintiff into signing a multitude of documents
236    in a short and pressured time frame in order to prevent Plaintiff from having time to fully
237    understand the alleged disclosures and stipulations Plaintiff was induced to sign.

238    Closing Agent failed to insure that all documents were properly prepared and in
239    compliance with all relevant consumer protection laws.

240    Closing Agent intentionally pressured Plaintiff to read and attempt to understand a stack
241    of mostly irrelevant documents for the express purpose of rendering Plaintiff susceptible to
242    undue pressure to enter into a predatory loan product to the detriment of Plaintiff.

243    ***UNSUPPORTED CLAIM OF AGENCY BY LENDER***

244    The identity of the current holder (otherwise known as the real party in interest) of the
245    promissory note alleged to have been created by Plaintiff is unknown to Plaintiff.  In a hearing

246   held by telephone, Wells Fargo admitted to the court that the note had been securitized.
247   Securitization means that the original lender sold or otherwise transferred ownership of the not to
248   another party.   The common practice in the industry concerning the securitization of notes
249   involves a numerous transfers or assignments of the note from one party to another.   In as much
250   as Wells Fargo has stipulated to the securitization of the note, it is incumbent upon Wells Fargo,
251   before they deprive Plaintiff of Plaintiff's property that Wells Fargo prove that it is the current
252   holder of the note and the deed of trust.

253         By plaintiff's original complaint challenged standing of Wells Fargo and demands that
254   Wells Fargo prove up its standing to enforce the deed of trust through a showing that Wells
255   Fargo is a valid holder of both the deed of trust and the note.

256         Subsequent to Lender's failure to identify the real party in interest as contemplated by
257   Uniform Commercial Code 3-501, Lender is statutorily estopped from pursuing collection on the
258   promissory note alleged to have been created by Plaintiff as Plaintiff is authorized to cease all
259   payments without dishonor until such time as Lender complies with all tenants of the alleged
260   promissory note and all applicable law.

261         Lender entered into a sales contract with an as yet unknown party for the sale of the
262   promissory note alleged to have been created by Plaintiff yet failed to publicly record said sale
263   with the clerk of the court.

264         Lender, in the capacity of the current servicer of the alleged promissory note, claims
265   agency to act in the place of the real party in interest on the above referenced security instrument.

266         Plaintiff, at closing, was given a photocopy of the original note signed by Plaintiff.

267         Plaintiff, at the time of closing, bolstered by the state of false trust in the "trustee" and
268   others, was not noticed or aware that Lender could have produced multiple originals of the
269   promissory note document.

270         Lender took the original promissory note out of sight of Plaintiff and allegedly made a
271   true and accurate copy and provided said copy to Plaintiff.

272         With the current state of technology, there is no way for Plaintiff to tell if the copy
273   provided to Plaintiff by Trustee was a true and correct copy of the promissory note allegedly
274   signed by Plaintiff.

275         Lender then retained the only original of the promissory note signed by Plaintiff.

276        Lender, upon request of Plaintiff, has failed to produce the original promissory note
277    signed by Plaintiff for examination.

278        The failure of Lender to produce, for inspection, as contemplated by Uniform
279    Commercial Code 3-501, an original promissory note creates the adverse inference that no such
280    note is in the possession of Lender

281        Lender, or current servicer, has failed to prove that Lender is a true agent of the principal
282    holder of the above referenced security instrument.

283        Plaintiff has reason to believe and does believe that the security instrument does not exist
284    and was deliberately destroyed by an agent of the real party in interest.

285        To the knowledge of Plaintiff, there exists only photo copies of the original security
286    instrument that could have been easily altered to favor Lender with covenants not present in the
287    original signed by Plaintiff.

288    ***SECURITIZATION PRACTICES VOID CONTRACT***

289        The original note contained a provision for modification of the original loan agreement.

290        The modification provision of the note has been rendered unenforceable as there is no
291    one known to Plaintiff who has authority to authorize a modification of the original contract.

292        By secretly selling the note as a security instrument, Defendant(s) have nullified a
293    provision of the contract which authorizes modification of the note.

294        Plaintiff, having reason to believe that fraud was involved in the creation of the loan
295    instruments, has a claim against the real party in interest, and thereby, has need to know all
296    parties who have received enrichment from the proceeds of said security instrument.

297        In as much as, in the case of a security instrument created from a note which is the result
298    of a consumer transaction, there can be no holder in due course and, according to the Federal
299    Trade Commission Holder Rule, 16 CFR 433, and 12 CFR 226 (Regulation Z), the holder of the
300    such security instrument stands in the shoes of the Lender and is subject to any claim Plaintiff
301    would have on the Lender, Plaintiff has a right to know the identity of any person or entity
302    currently claiming, or who has ever claimed real party interest in said security instrument.

303   *NOTE POOLED AND LOST*

304       At a point in time unknown to Plaintiff, either prior to or subsequent to the close of
305   escrow on their respective loans, Defendants did place or caused to be placed the original
306   promissory note executed by Plaintiff into a pool with multiple other such notes.

307       Said pooled notes were sold to one or more investors through securitized transactions
308   without Plaintiff's knowledge or consent and to Plaintiff's detriment.

309       The above sale transactions were not filed in the public record of the clerk of the county.

310       The above referenced pooled notes were repeatedly resold to numerous other investors.

311   *AGENT LACKS AGENCY*

312       It is the belief and specific allegation of Plaintiff that the alleged agent for the lender is
313   not the agent for the lender, but rather, is an unauthorized intervener who merely claims agency
314   for the purpose of defrauding Plaintiff of Plaintiff's property.  It is the further belief and
315   allegation of Plaintiff that the alleged agent for the lender has no contract to with the real party in
316   interest on the note and, therefore, has no agency to represent said real party in interest.

317   *REAL PARTY IN INTEREST UNKNOWN AND UN-PROVABLE*

318       The above referenced security instrument was filed with Mortgage Electronic
319   Registration Services (hereinafter referred to as "MERS"); a company purportedly established
320   for the purpose of registering mortgage as a security instrument.  Plaintiff alleges that MERS
321   scanned the original security instrument into their electronic system, and then destroyed the
322   original security instrument.

323       The pooled notes that included Plaintiff's original contract became lost, either as a result
324   of deliberate intent or the misconduct of the investors to whom they were sold.    It has become
325   impracticable to the point of being impossible to trace the location, the possessor, or the actual
326   holders(s) of the original promissory note.

327   *ASSIGNMENT OF NOTE IS FRAUD*

328       Plaintiff alleges and is prepare to prove at trial that the alleged assignment of standing to
329   enforce the note to Current Servicer is a fraud on the court as said instrument fails to identify the
330   real party in interest and does not contain evidence, affirmed and verified by the current principal
331   on the note granting agency to Current Servicer.

332  It is the assertion and allegation of Plaintiff that the alleged assignment presented by
333  Current Servicer, was not made by the real party in interest, but rather, by an employee of the
334  servicer bank, or some other person specifically designated to impersonate the real party in
335  interest. Therefore, it is the allegation of Plaintiff that the Current Servicer lack legal standing to
336  enforce the note and, therefore, are unable to invoke the subject matter jurisdiction of the court.

337  ***RESPA PENALTIES***

338  From a cursory examination of the records, with the few available, the apparent RESPA
339  violations are as follows:

340  Good  Faith Estimate not within limits

341  No HUD-1 Booklet

342  Truth In Lending Statement not within limits compared to Note

343  Truth in Lending Statement not timely presented

344  HUD-1 not presented at least one day before closing

345  No Holder Rule Notice in Note

346  No 1st Payment Letter

347  No signed and dated :

348  Financial Privacy Act Disclosure;

349  Equal Credit Reporting Act Disclosure;

350  notice of right to receive appraisal report;

351  servicing disclosure statement;

352  borrower's Certification of Authorization;

353  notice of credit score;

354  RESPA servicing disclosure letter;

355  loan discount fee disclosure;

356  business insurance company arrangement disclosure;

357  notice of right to rescind.

358  The courts have held that the borrower does not have to show harm to claim a violation
359  of the Real Estate Settlement Procedures Act, as the Act was intended to insure strict

360    compliance.  And, in as much as the courts are directed to assess a penalty of no less than two
361    hundred dollars and no more than two thousand, considering the large number enumerated here,
362    it is reasonable to consider that the court will assess the maximum amount for each violation.

363    Since the courts have held that the penalty for a violation of RESPA accrues at
364    consummation of the note, borrower has calculated that, the number of violations found in a
365    cursory examination of the note, if deducted from the principal, would result in an overpayment
366    on the part of the borrower, over the life of the note, of $215,712.75.

367    If the violation penalty amounts for each of the unsupported fees listed above are
368    included, the amount by which the borrower would be defrauded is $247,498.79

369    ***ADDING IN RESPA PENALTIES FOR ALL THE UNSUPPORTED SETTLEMENT FEES***
370    ***ALONG WITH THE TILA/NOTE VARIANCE, IT APPEARS THAT LENDER INTENDED***
371    ***TO DEFRAUD BORROWER IN THE AMOUNT OF $609,273.66 LIEN IS VOID***

372    Lender sold the security instrument immediately after closing and received consideration
373    in an amount in excess of the lien held by Lender.  Since Lender retained the lien document upon
374    the sale of the security instrument, Lender separated the lien from said security instrument,
375    creating a fatal and irreparable flaw.

376    When Lender received consideration while still holding the lien and said consideration
377    was in excess of the amount of the lien, Lender was in a position such that he could not be
378    harmed and could not gain standing to enforce the lien.  The lien was, thereby, rendered void.

379    Since the separation of the lien from the security instrument creates such a considerable
380    concern, said separation certainly begs a question: "Why would the Lender retain the lien when
381    selling the security instrument?"

382    When you follow the money the answer is clear.  The Lender will hold the lien for three
383    years, then file and IRS Form 1099a and claim the full amount of the lien as abandoned funds
384    and deduct the full amount from Lender's tax liability, thereby, receiving consideration a second
385    time.

386    Later, in the expected eventuality of default by Plaintiff, Lender then claimed to transfer
387    the lien to the holder of the security, however, the lien once satisfied, does not gain authority just
388    because the holder, after receiving consideration

389   ***LENDER PROFIT BY CREDIT FAULT SWAP DERIVATIVES***

390       Lender, as motivation for the above referenced fraud, further stood to profit by credit
391   fault swaps in the derivatives market, by way of inside information that Lender had as a result of
392   creating the faulty loans sure to default.  Lender was then free to invest on the bet that said loan
393   would default and stood to receive unjust enrichment a third time.  This credit default swap
394   derivative market scheme is almost totally responsible for the stock market disaster we now
395   experience as it was responsible for the stock market crash in 1907.

396   ***TILA AND RESPA SUBJECT TO EQUITABLE TOLLING***

397       The Limitations Period for Plaintiffs' Damages Claims under TILA and RESPA should
398   be Equitably Tolled due to the DEFENDANTS' Misrepresentations and Failure to Disclose.

399       Defendants Homecomings is correct to assert that claims for statutory and other money
400   damages under the Truth in Lending Act *(15 U.S.C. § 1601,* et. seq.) and under the Real Estate
401   Settlement Procedures Act *(12 U.S.C. § 2601* et. seq.) the time a claimant has to raise a claim
402   under RESPA is two years or until full disclosure.  The above allegations of fraud by non-
403   disclosure toll the limitations.  Further, such claims are subject to the equitable tolling doctrine.
404   The Ninth Circuit has interpreted the TILA limitations period in § 1640(e) as subject to equitable
405   tolling. In *King v. California, 784 F.2d 910 (9th Cir.1986),* the court held that given the remedial
406   purpose of TILA, the limitations period should run from the date of consummation of the
407   transaction, but that "the doctrine of equitable tolling may, in appropriate circumstances, suspend
408   the limitations period until the borrower discovers or has reasonable opportunity to discover the
409   fraud or nondisclosures that form the basis of the TILA action." *King v. California, 784 F.2d*
410   *910, 915 9t*h Cir. 1986).

411       Likewise, while the Ninth Circuit has not taken up the question whether *12 U.S.C. §*
412   *2614,* the anti-kickback provision of **RESPA,** is subject to equitable tolling, other Courts have
413   held that such limitations period may be equitably tolled. The Court of Appeals for the District of
414   Columbia held that § 2614 imposes a strictly jurisdictional limitation, *Hardin v. City Title &*
415   *Escrow Co., 797 F.2d 1037, 1039-40 (D.C. Cir. 1986),* while the Seventh Circuit came to the
416   opposite conclusion. *Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1164 (7th*
417   *Cir. 1997).* District courts have largely come down on the side of the Seventh Circuit in holding
418   that the one-year limitations period in § 2614 is subject to equitable tolling. See, e.g., *Kerby v.*
419   *Mortgage Funding Corp., 992 F.Supp. 787, 791-98 (D.Md.1998); Moll v. U.S. Life Title Ins. Co.,*
420   *700 F.Supp. 1284, 1286-89 (S.D.N.Y.1988).* Importantly, the Ninth Circuit, as noted above, has

421 interpreted the TILA limitations period in *15 U.S.C. § 1640* as subject to equitable tolling; the
422 language of the two provisions is nearly identical. *King v. California, 784 F.2d at 914.* While not
423 of precedential value, this Court has previously found both the TILA and **RESPA** limitations
424 periods to be subject to equitable tolling. *Blaylock v. First American Title Ins. Co., 504*
425 *F.Supp.2d 1091,* (W.D. Wash. 2007). 1106-07.

426      The Ninth Circuit has explained that the doctrine of equitable tolling "focuses on
427 excusable delay by the Plaintiff," and inquires whether "a reasonable Plaintiff would ... have
428 known of the existence of a possible claim within the limitations period." *Johnson v. Henderson,*
429 *314 F.3d 409, 414 (9th Cir.2002), Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th*
430 *Cir.2000).* Equitable tolling focuses on the reasonableness of the Plaintiff's delay and does not
431 depend on any wrongful conduct by the Defendants. Santa Maria. at 1178.

432                              **CLAIM TO QUIET TITLE.**

433      Plaintiff properly averred a claim to quiet title. Plaintiff included both the street address,
434 and the Assessor's Parcel Number for the property.  Plaintiff has set forth facts concerning the
435 title interests of the subject property.  Moreover, as shown above, Plaintiff's claims for rescission
436 and fraud are meritorious. As such, Plaintiff's bases for quiet title are meritorious as well.

437      Defendants' claims are without any right, and Defendants have no title, estate, lien, or
438 interest in the Subject Property in that purported power of sale contained in the Deed of Trust is
439 of no force or effect because Defendants' security interest in the Subject Property has been
440 rendered void and that the Defendants are not the holder in due course of the Promissory Note..
441 Moreover, because Plaintiff properly pled all Defendants' involvement in a the fraudulent
442 scheme, all Defendants are liable for the acts of its co-conspirators,

443 "a Plaintiff is entitled to damages from those Defendants who concur in the tortious scheme with
444 knowledge of its unlawful purpose." *Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 157 Cal.*
445 *Rptr. 392, 598 P.2d 45 (1979); Novartis Vaccines and Diagnostics, Inc. v. Stop Huntingdon*
446 *Animal Cruelty USA, Inc., 143 Cal. App. 4th 1284, 50 Cal. Rptr. 3d 27 (1st Dist. 2006); Kidron v.*
447 *Movie Acquisition Corp., 40 Cal. App. 4th 1571, 47 Cal. Rptr. 2d 752 (2d Dist. 1995).*

448                              **CAUSES OF ACTION**
449 ***BREACH OF GOOD FAITH AND FAIR DEALINGS***

450      Plaintiff, being an unsophisticated purchaser and being aware that there existed a number
451 of consumer protection laws in place to protect consumers from unscrupulous and underhanded
452 tactics by licensed professionals, was deceived into believing Plaintiff could trust said licensed

453 professionals to provide good faith and fair dealings with Plaintiff. *Slover v. State Board of*
454 *Clinical Social Workers, 144 Or.App. 565, 572, 927 P.2d 1098 (1996).*

### *FRAUD BY NON-DISCLOSURE BY LENDER*

456 Lender, in acts of fraud by non-disclosure, advised Plaintiff of some of the costs
457 associated with the loan while failing to give full disclosure.  Lender assured Plaintiff that the
458 loan product would be far less costly than defendants knew or should have known said loan
459 product would turn out to be.  Lender failed to provide full disclosure of the true nature of all the
460 costs to Plaintiff.  Lender knew that Plaintiff did not have equal access to information as Lender.
461 Lender took unfair advantage of Plaintiff's expectation of good faith and fair dealings created by
462 Lender's special status as a company doing business under a license.

463 Plaintiff, acting in good faith reliance on representations made by Lender, made the
464 decision to purchase the Property. Plaintiff was harmed as a result of the failure on the part of
465 Lender to give full disclosure.

### *BREACH OF FIDUCIARY DUTY*

467 It is the specific allegation of Plaintiff that, Broker conspired with Lender to receive
468 commissions in excess of the 1% maximum allowed by the Real Estate Settlement Procedures
469 Act.  In order to help insure that Broker, while acting as agent for Plaintiff,  would act in good
470 faith toward Plaintiff and seek out the best loan product for Plaintiff.  Lender, acting in direct
471 violation of Regulation Z, extended a loan origination fee to Broker in excess of the 1% allowed
472 by law.  Broker, subsequently, in an act of "breach of fiduciary duty," represented the note to
473 plaintiff as the best loan available to Plaintiff.

474

### *BREACH OF FIDUCIARY DUTY*

476 Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
477 allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
478 Causes of Action as though the same were set forth herein.

479 Defendants Agent, appraiser, trustee, Lender, et al, and each of them, owed Plaintiff a
480 fiduciary duty of care with respect to the mortgage loan transactions and related title activities
481 involving the Trust Property.

482 Defendants breached their duties to Plaintiff by, *inter alia,* the conduct described above.
483 Such breaches included, but were not limited to, ensuring their own and Plaintiffs' compliance

484  with all applicable laws governing the loan transactions in which they were involved, including
485  but not limited to, TILA, HOEPA, **RESPA** and the Regulations X and Z promulgated there
486  under.

487      Defendants' breaches of said duties was a direct and proximate cause of economic and
488  non-economic harm and detriment to Plaintiffs.

489      Plaintiff did, in fact, suffer economic and non-economic harm and detriment as a result of
490  such conduct, all to be shown according to proof at trial of this matter.

491  *CAUSE OF ACTION - NEGLIGENCE/NEGLIGENCE PER SE*

492      Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
493  allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
494  Causes of Action as though the same were set forth herein.

495      Defendants owed a general duty of care with respect to Plaintiffs, particularly concerning
496  their duty to properly perform due diligence as to the loans and related transactional issues
497  described hereinabove.

498      In addition, Defendants owed a duty of care under TILA, HOEPA, **RESPA** and the
499  Regulations X and Z promulgated there under to, among other things, provide proper disclosures
500  concerning the terms and conditions of the loans they marketed, to refrain from marketing loans
501  they knew or should have known that borrowers could  not afford or maintain, and to avoid
502  paying undue compensation such as "yield spread premiums" to mortgage Agents and loan
503  officers.

504      Defendants knew or in the exercise of reasonable care should have known, that the loan
505  transactions involving Plaintiff and other persons similarly situated were defective, unlawful,
506  violative of federal and state laws and regulations, and would subject Plaintiff to economic and
507  non-economic harm and other detriment.

508      Plaintiff is among the class of persons that TILA, HOEPA, **RESPA** and the Regulations
509  X and Z promulgated there under were intended and designed to protect, and the conduct alleged
510  against Defendants FIDELITY, CITIGROUP, and HOMEQ, and each of them is the type of
511  conduct and harm which the referenced statutes and regulations was designed to deter.

512      As a direct and proximate result of Defendant's negligence, Plaintiff suffered economic
513  and non-economic harm in an amount to be shown according to proof at trial.

514     *COMMON LAW FRAUD*

515     Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
516     allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
517     Causes of Action as though the same were set forth herein.

518     If any Defendants misrepresentations made herein were not intentional, said
519     misrepresentations were negligent. When the Defendants made the representations alleged
520     herein, he/she/it had no reasonable ground for believing them to be true.

521     Defendants made these representations with the intention of inducing Plaintiff to act in
522     reliance on these representations in the manner hereafter alleged, or with the expectation that
523     Plaintiff would so act.

524     Plaintiff  is informed and believes that Defendant et al, facilitated, aided and abetted
525     various Defendants  in their negligent misrepresentation, and that various Defendants  was
526     negligent in not implementing procedures such as underwriting standards oversight that would
527     have prevented various Defendants  from facilitating the irresponsible and wrongful
528     misrepresentations of various Defendants to Defendants .

529     Plaintiff is informed and believes that Defendant acted in concert along with other others
530     named herein in promulgating  false representations to cause Plaintiff  to enter into the LOAN
531     without knowledge or understanding of the terms thereof.

532     As a proximate result of the negligent misrepresentations of Defendants as herein alleged,
533     the Plaintiff  sustained damages, including monetary loss, emotional distress, loss of credit, loss
534     of opportunities, attorney fees and costs, and other damages to be determined at trial. As a
535     proximate result of Defendants' breach of duty and all other actions as alleged herein, Defendants
536     has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and
537     mental and physical pain and anguish, all to Plaintiff`s damage in an amount to be established at
538     trial;

539     *FRAUD BY NON-DISCLOSURE*

540     Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
541     allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
542     Causes of Action as though the same were set forth herein.

543     Claimant made representation to Plaintiff that Claimant had authority to exercise
544 foreclosure on the deed of trust and mortgage note agreement entered into between Claimant and
545 Plaintiff.

546     Claimant not the real party in interest of the mortgage note upon authority of which
547 Defendants claimed authority.

548     Defendant had a duty to reveal to Plaintiff that Claimant was not the real party in interest
549 of the security interest that would give Claimant standing to foreclose on the property at issue.

550      The fact that Claimant was not the real party in interest of the mortgage note was
551 material to standing of Defendants to exercise the authority Defendants claimed.

552     Plaintiff was ignorant of the fact that Claimant was not the real party in interest of the
553 necessary security interest, neither did Plaintiff have equal opportunity to discover the fact of the
554 sale of the security interest by Claimant.

555     Claimant was deliberately silent when they had a duty to speak.

556     By failing to disclose the above referenced facts, Claimant intended that Plaintiff should
557 rely on Claimant claimed authority to sell the personal property of Plaintiff and force Plaintiff to
558 vacate Plaintiff's primary place of residence.

559     Plaintiff relied on Claimant's nondisclosure and was injured as a result of acting without
560 the knowledge of the undisclosed facts.

561 *FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.*

562     Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
563 allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
564 Causes of Action as though the same were set forth herein.

565     Plaintiff properly pled Defendant(s) violated the breach of implied covenant of good faith
566 and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in
567 its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261*
568 *Cal. Rptr. 735 (1989);* Rest.2d Contracts § 205. A mortgage Agent has fiduciary duties. *Wyatt v.*
569 *Union Mortgage Co., (1979) 24 Cal. 3d. 773.* Further, In *Jonathan Neil & Associates, Inc. v*
570 *Jones, (2004) 33 Cal. 4th 917,* the court stated:

571     In the area of insurance contracts the covenant of good faith and fair dealing has taken on
572 a particular significance, in part because of the special relationship between the insurer and the
573 insured. The insurer, when determining whether to settle a claim, must give at least as much
574 consideration to the welfare of its insured as it gives to its own interests. . . The standard is
575 premised on the insurer's obligation to protect the insured's interests . . . *Id. at 937.*

576         Likewise, there is a special relationship between an agent and borrower. "A person who
577    provides services to a borrower in a covered loan transaction by soliciting Lenders or otherwise
578    negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this
579    fiduciary duty [is owed] to the consumer regardless of whom else the agent may be acting as an
580    agent for . . . The fiduciary duty of the agent is to deal with the consumer in *good faith.* If the
581    *Agent knew or should have known that the Borrower will or has a likelihood of defaulting ... they*
582    *have a fiduciary duty to the borrower not* to place them in that loan." (California Department of
583    Real Estate, *Section 8: Fiduciary Responsibility,* www.dre.ca.gov). [*Emphasis Added*].

584         All Defendant(s), willfully breached their implied covenant of good faith and fair dealing
585    with Plaintiff when Defendant(s): (1) Failed to provide all of the proper disclosures; (2) Failed to
586    provide accurate Right to Cancel Notices; (3) Placed Plaintiff into the current loan product
587    without regard for other more affordable products; (4) Placed Plaintiff into a loan without
588    following proper underwriting standards; (5) Failed to disclose to Plaintiff that Plaintiff was
589    going to default because of the loan being unaffordable; (6) Failed to perform valid and /or
590    properly documented substitutions and assignments so that Plaintiff could ascertain her rights
591    and duties; and (7) Failed to respond in good faith to Plaintiff's request for documentation of the
592    servicing of her loan and the existence and content of relevant documents. Therefore, due to the
593    special relationship inherent in a real estate transaction between Agent and borrower, *and* all
594    Defendant(s) participation in the conspiracy.

595    *CAUSE OF ACTION VIOLATION OF TRUTH IN LENDING ACT 15 U.S.C. §1601 ET*
596    *SEQ*

597         Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
598    allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
599    Causes of Action as though the same were set forth herein.

600         This consumer credit transaction was subject to the Plaintiff's right of rescission as
601    described by *15 U.S.C. § 1635*(a) and Regulation Z § 226.23 (12 C.F.R. § 226.23).

602         More particularly, the same Defendants violated *15 U.S.C. § 1635*(a) and
603    Regulation Z § 226.23(b) with regards to the purported Notice of Right to Cancel. As a
604    consequence of this action, the Notice of Right to Cancel documentation was not provided
605    to Plaintiff or if furnished, to Plaintiff it failed to: Correctly identify the transaction;
606    Clearly and conspicuously disclose the Plaintiff's right to rescind the transaction three days
607    after delivery of all required disclosures; Clearly and conspicuously disclose how to

608   exercise the right to rescind the transaction, with a form for that purpose; Clearly and
609   conspicuously disclose the effects of rescission; Clearly and conspicuously disclose the
610   date the rescission period expired.

611   Furthermore, Plaintiff is informed and believes that Defendants violated TILA at
612   the time of origination because, among other things: Multiple GFE's used to mislead and
613   confuse borrower about actual terms of Notes;

614   Plaintiff is informed and believes that Defendants's violation of the provisions of law
615   rendered the credit transaction null and void, invalidates Defendants's claimed interest in the
616   Subject Property, and entitles Plaintiff to damages as proven at trial.

617   *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

618   The conduct committed by Defendants, driven as it was by profit at the expense of
619   increasingly highly leveraged and vulnerable consumers who placed their faith and trust in the
620   superior knowledge and position of Defendants, was extreme and outrageous and not to be
621   tolerated by civilized society.

622   Defendants either knew that their conduct would cause Plaintiff to suffer severe
623   emotional distress, or acted in conscious and/or reckless disregard of the probability that such
624   distress would occur.

625   Plaintiff did in fact suffer severe emotional distress as an actual and proximate result of
626   the conduct of Defendants as described hereinabove.

627   As a result of such severe emotional distress, Plaintiff suffered economic and non
628   economic harm and detriment, all to be shown according to proof at trial of this matter.

629   Plaintiff demands that Defendants provide Plaintiff with release of lien on the lien signed
630   by Plaintiff and secure to Plaintiff quite title;

631   Plaintiff demands Defendants disgorge themselves of all enrichment received from
632   Plaintiff as payments to Defendants based on the fraudulently secured promissory note in an
633   amount to be calculated by Defendants and verified to Plaintiff;

634   Plaintiff further demands that Defendants pay to Plaintiff an amount equal to the amount
635   Defendants intended to defraud Plaintiff of which amount Plaintiff calculated to be equal to
636   $742,496.37;

637 **SUFFICIENCY OF PLEADING**

638    Plaintiff has sufficiently pled that relief can be granted on each and every one of the

639 Complaint's causes of action. Federal Rule of Civ. Procedure 12(b)(6) provides for dismissal if a

640 Plaintiff fails to state a claim upon which relief can be granted. A complaint should not be

641 dismissed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support

642 of her claim which would entitle her to relief." *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400,*

643 *401.* "All allegations of material fact in the complaint are taken as true and construed in the light

644 most favorable to Plaintiff." *Argabright v. United States, 35 F.3d 1476, 1479 (9th Cir. 1996).*

645    Attendant, the Complaint includes a "short, plain statement, of the basis for relief." Fed. Rule Civ.

646 Proc. 8(a). The Complaint contains cognizable legal theories, sufficient facts to support cognizable legal

647 theories, and seeks remedies to which Plaintiff is entitled. *Balistreri v. Pacifica Police Dept., 901 F.2d*

648 *696, 699 (9th Cir. 1988); King v. California, 784 F.2d 910, 913 (9th Cir. 1986).* Moreover, the legal

649 conclusions in the Complaint can and should be drawn from the facts alleged, and, in turn, the court

650 should accept them as such. *Clegg v. Cult Awareness Network, 18 F.3d 752* (9th Cir, 1994). Lastly,

651 Plaintiff's complaint contains claims and has a probable validity of proving a "set of facts" in support of

652 their claim entitling them to relief. *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401.* Therefore,

653 relief as requested herein should be granted.

654 **PRAYER**

655    WHEREFORE, Petitioner prays for judgment against the named Defendants, and each of

656 them, as follows:

657    For an emergency restraining order enjoining lender and any successor in interest

658    from foreclosing on Petitioner's Property pending adjudication of Petitioner's claims set

659    forth herein;

660    For a permanent injunction enjoining Defendants from engaging in the fraudulent,

661    deceptive, predatory and negligent acts and practices alleged herein;

662    For quiet title to Property;

663    For rescission of the loan contract and restitution by Defendants to Petitioner

664    according to proof at trial;

665    For disgorgement of all amounts wrongfully acquired by Defendants according to

666    proof at trial;

667    For actual monetary damages in the amount $742,496.37;

668    For pain and suffering due to extreme mental anguish in an amount to be

669    determined at trial.

670    For pre-judgment and post-judgment interest according to proof at trial;

671           For punitive damages according to proof at trial in an amount equal to

672     $1,827,820.98.

673           For attorney's fees and costs as provided by statute; and,

674           For such other relief as the Court deems just and proper.

675     **Respectfully Submitted,**
676
677
678

679     **Howard  Willis**

680

681

682                          Certificate of Service

683

684     I, Howard Willis, certify that on September 23, 2010, I did mail via US Postal
685     Service first class mail postage paid a true and correct copy of the above and
686     foregoing MOTION FOR MORE DEFINITE STATEMENT to:
687
688     John M Kuker
689     James M. Peterson
690     Romsa & Kuker LLC
691     2123 Pioneer Ave.
692     Cheyenne, Wyoming 82001
693
694
695
696
697     Howard Willis