Howard J. Willis
2525 County Road 218
Cheyenne, Wyoming  82009
Croatalis@AOL.Com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

NOV - 5 2010

Stephan Harris, Clerk
Cheyenne

UNITED STATES DISTRICT COURT

DISCTRICT OF WYOMING

**Howard J. Willis**

Plaintiff,

vs.

**Nationwide Advantage Mortgage**

Defendant

Case # 10-CV-173D

**AMMENDED COMPLAINT**

Date: October 29, 2010

## PARTIES

(1) Plaintiff is  Howard J. Willis , 2525 County Road 218 , Laramie ,  WY  82009, hereinafter referred to as "Plaintiff."  Property Description :  A parcel of land situated in the Northwest quarter of Section 20, Township 15 North, Range 66 West of the 6th Principal Meridian, Laramie County, Wyoming, being described as follows: Beginning at a point on the West line of said Section 20 from which the West quarter corner thereof bears South 00 degrees 24 minutes 15 seconds West, a distance of 920.58 feet thence North 00 degrees 24 minutes 15 seconds East, along said West line, a distance of 1723.30 feet to the Northwest corner of said Section 20; thence South 89 degrees 51 minutes 27 seconds East, along the North line of said Section 20, a distance of 1029.72 feet; thence South 00 degrees 24 minutes 15 seconds West, a distance of 1660.97 feet; thence South 86 degrees 40 minutes 47 seconds West, a distance of 1031.89 feet to the point of beginning.

Currently Known Defendant(s) are/is: Nationwide Advantage Mortgage , 1100 Locust St. Dept 2009, Des Moines, Iowa  50391 hereinafter referred to as "Lender," or "Defendant(s)," "Defendant Lender."

## JURISDICTION AND VENUE

(2) This Court has personal jurisdiction over the Defendants named herein because a substantial portion of the wrongdoing alleged in this complaint took place in Laramie County, Cheyenne, Wyoming and the Defendants are authorized to and regularly do business in Laramie County, Cheyenne, Wyoming.

More Definite Statement

1 of 25

This is an action for violations of TILA (*15 U.S.C. §§1601 et seq.*) and the Real Estate Settlement and Procedures Act ("**RESPA**" (*12 U.S.C. §2602*)). Plaintiff further invokes the pendent jurisdiction of this Court to consider claims arising under state law. Jurisdiction is thus founded on *28 U.S.C. §§1331* and *1367* [\*6] .

(3) Venue is proper in this judicial district pursuant to *28 U.S.C.§ 1391(b)* because a substantial portion of the events and omissions giving rise to this complaint occurred within Laramie County, Cheyenne, Wyoming. The loan contracts between Plaintiff and Defendants were made and to be performed, and the obligations arose in Laramie County, Cheyenne, Wyoming.

## STATEMENT OF FACTS

(4) Plaintiff entered into an express contract with Defendants.     Said contract consisted of a promissory note, hereinafter referred to as "note," and a lien document, hereinafter referred to as "lien."

(5) Plaintiff and seller engaged the services of Benchmark Financial Services, as a duly licensed mortgage broker in the state of Wyoming, hereinafter referred to as "Broker," to assist Plaintiff and seller in the sale of the property.  Broker was compensated from funds assessed to Plaintiff at closing (see Housing and Urban Development Form 1, hereinafter referred to as "settlement statement, creating a duty of good faith and fair dealing of Broker to Plaintiff.  Broker, acting in violation of Broker's fiduciary duty to Plaintiff, gave partial disclosure to Plaintiff as to the value of the property and the then current condition of the real estate market, but failed to give full disclosure of the true value of the property or the volatile nature of the real estate market and the high risk of dramatic changes in property values resulting from blatant fraudulent practices being practiced by broker, et al.

(6) Broker further miss-informed Plaintiff as to the availability credit to Plaintiff by failing to advise Plaintiff that Plaintiff qualified for a less expensive loan product than the loan product proposed to Plaintiff by Broker.

(7) Plaintiff, by engaging the services of a duly licensed professional, exercised due diligence to insure good faith and fair dealings concerning compliance with all laws, rules, and regulations concerning the note and associated lien document.

(8) Plaintiff was referred by Broker to Draper & Kramer Mortgage Corporation, a duly licensed mortgage company in the state of Wyoming, hereinafter referred to as "Lender," for the purpose of financing the intended sale of the property.  Lender gave partial disclosure to Plaintiff concerning the value of the property, the condition of the real estate market, and the availability of credit to Plaintiff. Lender failed to give full disclosure to Plaintiff concerning the true value of the property, the then current risks and trends of the real estate market toward market instability, and the then current credit available to Plaintiff.

(9) Plaintiff exercised due diligence by only dealing with a duly licensed mortgage company, to insure good faith and fair dealings in accordance with all existing law, rules, and regulations concerning the note and associated lien.

(10) Lender engaged the services of Brown Appraisal Services LLC, a duly licensed appraiser in the state of Wyoming, hereinafter referred to as "Appraiser," to prepare an appraisal of the then current value of the property. Lender, at closing, assessed fees to Plaintiff as compensation for the services of Appraiser. Appraiser accepted said compensation creating a fiduciary duty on the part of Appraiser to Plaintiff (See Appraisal Fee).

(11) Lender, by way of rules passed by the banking industry, had exclusive authority to engage the services of Appraiser. In as much as Appraiser has a fiduciary duty to Plaintiff to provide fair and honest services, when Lender takes it upon itself to exclusively select the Appraiser, Lender takes on responsibility for the Appraiser Lender chooses to employ. In as much as Appraiser violated his fiduciary duty to Plaintiff, Lender is responsible for said violation and is, thereby, civilly responsible as if Lender had committed the violation. Lender, thereby, owed a duty of good faith and fair dealing to Plaintiff and violated said duty by taking unfair advantage of said exclusive hiring authority by exerting improper influence on Appraiser in order to induce Appraiser to breach Appraiser's fiduciary duty to Plaintiff by preparing an artificially inflated appraisal of the currently existing true value of the property.

(12) Plaintiff exercised due diligence by only dealing with a duly licensed appraiser to insure good faith and fair dealings in accordance with all existing law, rules, and regulations concerning the note and associated lien.

(13) Lender engaged the services of, Summit Title Services, as an underwriter, to perform an examination of the loan documents. Plaintiff was assessed fees for the services of said Underwriter (see Underwriter Fee as listed on the settlement statement attached) creating a fiduciary duty on the part of Underwriter to Plaintiff. Underwriter breached Underwriter's fiduciary duty to Plaintiff and violated Plaintiff's right to good faith and fair dealing by failing to properly examine said documents and insure that all current regulatory laws, rules, and regulations were complied with. By paying an underwriter to examine into and certify to the propriety of all documentation concerning the mortgage agreement, exercised due diligence in order to insure that all matters concerning the note and associated lien were proper and in accordance with existing law.

(14) Lender, after being provided with a completed Housing and Urban Development Form 1003, failed to provide necessary statutorily required notices to Plaintiff that would give Plaintiff full disclosure as to the costs of the note so as to allow Plaintiff to make an informed decision as to competitive offers, thereby denying Plaintiff in Plaintiff's reasonable expectation of good faith and fair dealing from licensed professionals.

(15) Lender engaged the services of Summit Title Services, a duly licensed Title Agency in the state of Wyoming, hereinafter referred to as "Closing Agent," to perform the closing services on the sale of the property. On the first day of February, 2008, under the guidance of Closing Agent, Plaintiff entered into a contract loan with Lender, said contract hereinafter referred to as the "note."

(16) On the day of closing on the property, Plaintiff was provided with the Truth in Lending Statement (see Truth In Lending Statement  and settlement statement.

At closing on the property, Lender assessed fees as listed on the settlement statement. The fees assessed on the settlement statement were as follows:

| 801 | Loan Origination Fee | $2,420.95 |
| 803 | Appraisal | $350.00 |
| 809 | VA Funding Fee | $5,095.50 |
| 901 | Interest | $1,418.58 |
| 903 | Hazard Insurance Premium | $1,000.50 |
| 1001 | Hazard Insurance | $1,062.00 |
| 1004 | County Property Taxes | $905.55 |
| 1101 | Settlement fee | $125.00 |
| 1105 | Document Printing Fee | $25.00 |
| 1108 | Title Insurance | $483.75 |
| 1111 | Courier Fees | $25.00 |
| 1201 | Recording Fee | $76.00 |
| 1205 | Record Homestead Waiver | $8.00 |
| 1303 | Foundation Inspection | $250.00 |

(17) At closing, Lender failed to provide documentation to show that the above referenced fees were authorized by law, that the services billed for were necessary, that the amounts charged for said services were reasonable, and that Lender did not take an undisclosed markup on said fees. The fees assessed on the settlement statement were added to the principal on the note and interest was charged to Plaintiff on said amounts.

(18) Plaintiff provided to Lender, at the time of the consummation of the note, a document witch established a lien against the property. Said lien document specifically stated that it was intended to protect Lender from loss if Plaintiff failed to abide by the promises made in the note.

(19) Within days after the consummation of the above referenced note, Lender traded the note to Nationwide Advantage Mortgage, hereinafter referred to as "Initial Investor," for consideration accepted.

(20) At the sale of the note to Initial Investor, Lender bi-furcated the note and lien by retaining possession of the lien while transferring possession of the note to Initial Investor. *(see Landmark v. Kessler)*.

(21) The note was subsequently sold repeatedly to other parties who failed to properly register said sales with the court recorder's office in the county in which the property lies, thereby, obscuring the true holder of the note.

More Definite Statement                                                                 4 of 25

(22) After sale of the note, Lender became the servicer of the note, in that Lender contracted with the Initial Investor who was the real party in interest on the note at the time of sale to collect the monthly payments made on the note.

## SUBSEQUENT TO PROPER DISCOVERY PLAINTIFF WILL PROVE THE FOLLOWING

(23) Subsequent to proper discovery, Plaintiff is prepared to prove, by a preponderance of evidence that:

**a)** Loan Originator committed fraudulent concealment against Plaintiff by failing to give full disclosure of the value and condition of the property, acting in concert and collusion with Lender for the purpose of defrauding Plaintiff and, therefore, the note is a void contract based on fraud; **b)** Lender gave partial disclosure of the true value and current condition of the property in order to induce Plaintiff to enter into a contract detrimental to Plaintiff with the conscious intent that Plaintiff default on said contract; **c)** Lender conspired with appraiser in order to induce appraiser to violate his duty of good faith and fair dealing with Plaintiff by appraising the property at an artificially high price in order to induce Plaintiff into entering into a falsely inflated loan product; **d)** to Plaintiff, but failed to give full disclosure of information with full knowledge that Plaintiff did not have equal access to said information **e)** Lender is not a real party in interest in any contract which can claim a collateral interest in the property; **f)** even if Lender were to prove up a contract to which Lender had standing to enforce against Plaintiff, no valid lien exists which would give Lender a claim against the property; **g)** even if Lender were to prove up a contract to which Lender had standing to enforce against Plaintiff, said contract was fraudulent in its creation as endorsement was secured by acts of negligence, common law fraud, fraud by non-disclosure, fraud in the inducement, fraud in the execution, usury, and breaches of contractual and fiduciary obligations by Mortgagee or "Trustee" on the Deed of Trust, "Mortgage Agents," "Loan Originators," "Loan Seller," "Mortgage Aggregator," "Trustee of Pooled Assets," "Trustee or officers of Structured Investment Vehicle," "Investment Banker," "Trustee of Special Purpose Vehicle/Issuer of Certificates of 'Asset-Backed Certificates,'" "Seller of 'Asset-Backed' Certificates (shares or bonds)," "Special Servicer" and Trustee, respectively, of certain mortgage loans pooled together in a trust fund; **h)** Lenders have concocted a carefully crafted connivance wherein Lender conspired with Agents, et al, to strip Plaintiff of Plaintiff's equity in the property by inducing Plaintiff to enter into a predatory loan inflated loan product; **i)** Lender received unjust enrichment in the amount of 5% of each payment made late to Lender while Lender and Lender's assigns acted as servicer of the note; **j)** Lender and Lender's assigns, who acted as servicer in place of Lender, profited by handling the foreclosure process on a contract Lender designed to have a high probability of default;    **k)** Lender intended to defraud Investor by converting the promissory note

into a security instrument and selling same to Investor; **l)** Lender intended to defraud Investor and the taxpayers of the United States by withholding the lien document from the sale of the promissory note in order that Lender could then hold the lien for three years, then prepare and file Internal Revenue Form 1099a and falsely claim the full lien amount as abandoned funds and deduct same from Lender's income tax obligation, and thereby comes to the court with dirty hands; **m)** Lender defrauded backers of derivatives by betting on the failure of the promissory note the lender designed to default; **n)** participant Lenders, et al, in the securitization scheme described herein have devised business plans to reap millions of dollars in profits at the expense of Plaintiff and others similarly situated.

### *ALL POSSIBLE PARTIES NOT NAMED*

(24) Plaintiffs have alleged that Lenders together, in a "conspiratorial nature", undertook the misdeeds herein. Lenders named herein are indeed liable to the extent that they acted as agents, servants and/or employees of the remaining Lenders and for each other. The Ninth Circuit has held that averments of agency are not required in a complaint. (See, <u>Greenberg v. Sala, 822 F.2d 882, 886 (9th Cir. 1987)</u> (holding that "[a] person legally responsible for an act may be alleged to have committed it without going into the theories which support that ultimate fact").) As such, the "civil conspiracy" as alleged and incorporated into [*12] all subsequent Causes of Action sufficiently provides the threshold legal and factual basis for several causes of action that at first blush may seem inappropriate for a particular Lender. The overview to this "shell" game is that all who participated in this scheme cannot now claim that they are somehow an innocent, unrelated third party.

(25) Since all actors in a conspiracy act *in pari delicto,* and, thereby, are equally culpable for the acts of each, Plaintiff did not name Agent, Appraiser, Underwriter, Closing Agent, et, as said actors are not necessary parties. In the interest of judicial economy, Plaintiff only specifically named the party presently claiming agency and standing to enforce the note. If said Lender has reason to believe that others are liable, Lender is certainly free to cross-complain in order to lessen the potential financial burden on Lender.)

### *FAILED TO MAKE CONSPICUOUS DISCLOSURES*

(26) Broker, Appraiser, Closing Agent, and Lender failed to make all disclosures to Plaintiff clearly and conspicuously as required by 12 CFR 226.17(a)). The above referenced Lenders crafted disclosures in turgid and confusing language, laced with undefined terms of art (legalese) and grouped with many unnecessary and confusing documents for the purpose of rendering the disclosures unintelligible to a reasonable person of ordinary knowledge and understanding of the English language.

The above referenced failure defrauded Plaintiff by effecting a lack of full disclosure to Plaintiff which unduly induced Plaintiff to enter into the contract herein referred to as the note.

### *TRUTH IN LENDING STATEMENT NOT TIMELY*

(27) Lender failed to provide a Truth in lending statement at least three days before closing in violation of 12 CFR 226.31(c)(1). This failure on the part of Lender had the effect of perpetrating fraud against Plaintiff by denying Plaintiff in timely full disclosure. Beyond the obvious violation of the Truth in Lending Act, Lender gave partial disclosure to plaintiff and by so doing invoked a duty to give full disclosure. Lender gave false disclosure by only disclosing facts intended to induce Plaintiff to proceed with the purchase of said property while consciously withholding information that would have given Plaintiff reason to make a different decision.

### *TERMS FOR THE NOTE CHANGED AT CLOSING*

(28) The terms for the note were changed at closing without prior notice to Plaintiff in violation of 21 CFR 226 (c)(1)(i). Lender contrived to defraud Plaintiff by exerting undue influence by on Plaintiff by making an offer Lender did not intend to honor, but rather, induced Plaintiff to so arrange Plaintiff's affairs so as to commit Plaintiff to the contract. Lender then, at the last moment, improperly changed the contract conditions, thereby defrauding Plaintiff and forcing Plaintiff into an unfavorable contract.

### *DISCLOSURES DID NOT REFLECT TERMS*

(29) The disclosures to provided Plaintiff by Lender did not accurately reflect the closing amounts and did not clearly state that the disclosures were estimates in violation of 12 CFR 226.31(d)(1). Lender perpetrated fraudulent concealment by representing to Plaintiff certain information as if said information were facts when, in fact, said information was only estimates, thereby giving Plaintiff a false impression of the conditions of the contract.

### *PER DIEM INTEREST NOT ACCURATELY DISCLOSED*

(30) Lender failed to provide documentation to show that the calculation of the per diem interest was true and accurate in violation of 12 CFR 226.3(a)(ii). The act of "breach of fiduciary duty," represented the note to plaintiff as the best loan available to Plaintiff.

### *IMPROPERLY CHARGED FEES*

(31) Lender(s), at closing, charged fees to Plaintiff that were intended to be included in the finance charge. Lender(s), instead of absorbing said costs as the normal part of doing business, improperly assessed charges to Plaintiff, added said charges to the original principal, and intended to charge plaintiff interest on said charges for the full term of the agreement.

(32) Plaintiff was induced to accept the fees as genuine and proper because of the licensed status of the closing agent. Plaintiff, by virtue of said licensed status, had cause to hold a reasonable expectation of good faith and fair dealings from Lender agent, Lender, and closing agent.

(33) The amount of overpayment on the note Lender intended Plaintiff pay over the term of the note would be in the amount of $145,608.75. Said improper charges include, but are not limited to charges by third parties which are not otherwise excluded under 12 CFR 226.4(a)(1)(i)). Lender required the use of said third parties as a condition of or an incident to the extension of credit which included, but is not limited to charges for appraisers, inspectors, underwriters, and others to be determined subsequent to discovery.

## UNSUPPORTED CLAIM OF AGENCY BY LENDER

(34) The identity of the real party in interest on the promissory note alleged to have been created by Plaintiff is unknown to Plaintiff. Plaintiff has no way of knowing, absent full disclosure under discovery, who is the real party in interest. If Plaintiff were to completely pay off the note, Plaintiff cannot be sure that Plaintiff will be able to secure quiet title to the property as the true holder is not known and, because of the actions of Defendants, may actually be unknowable.

(35) Subsequent to Lender's failure to identify the real party in interest as contemplated by Uniform Commercial Code 3-501, Lender is statutorily estopped from pursuing collection on the promissory note alleged to have been created by Plaintiff as Plaintiff is authorized to cease all payments without dishonor until such time as Lender complies with all tenants of the alleged promissory note and all applicable law. Lender entered into a sales contract with an as yet unknown party for the sale of the promissory note alleged to have been created by Plaintiff yet failed to publicly record said sale with the clerk of the court.

(36) The current servicer of the alleged promissory note, claims agency to act in the place of the real party in interest on the above referenced security instrument. In as much as all sales of the security instrument have not been properly filed in the public record with the county recorder, Plaintiff has no way of tracing the chain of ownership of the security instrument and, therefore, is unable to determine who the current holder of the note is. Plaintiff, at closing, was given a photocopy of the original note signed by Plaintiff. Plaintiff, at the time of closing, bolstered by the state of false trust in the "trustee" and others, was not noticed or aware that Lender could have produced multiple originals of the promissory note document. Lender took the original promissory note out of sight of Plaintiff and allegedly made a true and accurate copy and provided said copy to Plaintiff. With the current state of technology, there is no way for Plaintiff to tell if the copy provided to Plaintiff by Trustee was a true and correct copy of the promissory note allegedly signed by Plaintiff. Lender then retained the only original of the promissory

note signed by Plaintiff. Lender, upon request of Plaintiff, has failed to produce the original promissory note signed by Plaintiff for examination.

(37) The failure of Lender to produce, for inspection, as contemplated by Uniform Commercial Code 3-501, an original promissory note creates the adverse inference that no such note is in the possession of Lender. Lender, or current servicer, has failed to prove that Lender is a true agent of the principal holder of the above referenced security instrument. Plaintiff has reason to believe and does believe that the security instrument does not exist and was deliberately destroyed by an agent of the real party in interest. To the knowledge of Plaintiff, there exists only photo copies of the original security instrument that could have been easily altered to favor Lender with covenants not present in the original signed by Plaintiff.

## *SECURITIZATION PRACTICES VOID CONTRACT*

(38) The original note contained a provision for modification of the original loan agreement. The modification provision of the note has been rendered unenforceable as there is no one known to Plaintiff who has authority to authorize a modification of the original contract. By secretly selling the note as a security instrument, Lender(s) have nullified a provision of the contract which authorizes modification of the note. Plaintiff, having reason to believe that fraud was involved in the creation of the loan instruments, has a claim against the real party in interest, and thereby, has need to know all parties who have received enrichment from the proceeds of said security instrument. In as much as, in the case of a security instrument created from a note which is the result of a consumer transaction, there can be no holder in due course and, according to the Federal Trade Commission Holder Rule, 16 CFR 433, and 12 CFR 226 (Regulation Z), the holder of the such security instrument stands in the shoes of the Lender and is subject to any claim Plaintiff would have on the Lender, Plaintiff has a right to know the identity of any person or entity currently claiming, or who has ever claimed real party interest in said security instrument.

## *AGENT LACKS AGENCY*

(39) It is the belief and specific allegation of Plaintiff that the alleged agent for the lender is not the agent for the lender, but rather, is an unauthorized intervener who merely claims agency for the purpose of defrauding Plaintiff of Plaintiff's property. It is the further belief and allegation of Plaintiff that the alleged agent for the lender has no contract to with the real party in interest on the note and, therefore, has no agency to represent said real party in interest.

## *ASSIGNMENT OF NOTE IS FRAUD*

(40) Plaintiff alleges and is prepared to prove at trial that the alleged assignment of standing to enforce the note to Current Servicer is a fraud on the court as said instrument fails to identify the real

party in interest and does not contain evidence, affirmed and verified by the current principal on the note granting agency to Current Servicer.

(41) It is the assertion and allegation of Plaintiff that the alleged assignment presented by Current Servicer, was not made by the real party in interest, but rather, by an employee of the servicer bank, or some other person specifically designated to impersonate the real party in interest. Therefore, it is the allegation of Plaintiff that the Current Servicer lack legal standing to enforce the note and, therefore, are unable to invoke the subject matter jurisdiction of the court.

## *RESPA PENALTIES*

(42) From a cursory examination of the records, with the few available, the apparent RESPA violations are as follows:

a) Good  Faith Estimate not within limits b) No HUD-1 Booklet c) Truth In Lending Statement not within limits compared to Note d) Truth in Lending Statement not timely presented e) HUD-1 not presented at least one day before closing f) No Holder Rule Notice in Note g) No 1st Payment Letter  h) No signed and dated  i) Financial Privacy Act Disclosure  j) Equal Credit Reporting Act Disclosure k) notice of right to receive appraisal report l) servicing disclosure statement m) borrower's Certification of Authorization n) notice of credit score o) RESPA servicing disclosure letter  p) loan discount fee disclosure q) business insurance company arrangement disclosure r) notice of right to rescind.

(43) The courts have held that the borrower does not have to show harm to claim a violation of the Real Estate Settlement Procedures Act, as the Act was intended to insure strict compliance.  And, in as much as the courts are directed to assess a penalty of no less than two hundred dollars and no more than two thousand, considering the large number enumerated here, it is reasonable to consider that the court will assess the maximum amount for each violation.  Since the courts have held that the penalty for a violation of RESPA accrues at consummation of the note, borrower has calculated that, the number of violations found in a cursory examination of the note, if deducted from the principal, would result in an overpayment on the part of the borrower, over the life of the note, of $215,712.75

(44) If the violation penalty amounts for each of the unsupported fees listed above are included, the amount by which the borrower would be defrauded is $247,498.79.  Adding in RESPA penalties for all the unsupported settlement fees along with the TILA/Note variance, it appears that lender intended to defraud borrower in the amount of $609,273.66.

## *TILA & RESPA SUBJECT TO EQUITABLE TOLLING*

(45) Plaintiff acted with due diligence by dealing only with licensed professionals.  Plaintiff, by so doing had cause to trust in the proactive statements of Defendants concerning the true value of the property, the condition of the real estate market, and the propriety of the fees charged to Plaintiff at

closing. Defendants acted with deliberate malice toward Plaintiff in that Defendants by making proactive statements to Plaintiff that revealed certain facts which would give a reasonable person of ordinary prudence cause to believe the current loan was properly priced and that said loan was the only loan Plaintiff qualified for while withholding facts which would have given Plaintiff full disclosure. Defendants actively concealed the complete truth from Plaintiff with the intent of defrauding Plaintiff.

     a.  The Eleventh Circuit stated that "in deciding whether the statute should be tolled, it must be determined whether a 'reasonably diligent plaintiff' would have discovered the fraud." Id. ( *Sterlin v. Biomune Systems, 154 F.3d 1191, 1201 (10th Cir. 1998))*.

(46) Plaintiff, once put on notice of the pervasive fraud affecting the real estate industry, acted immediately with due diligence and engaged professionals to examine into the propriety of the practices engaged in by Defendants.

     b.  The First Circuit, based on the same rationale as the Seventh Circuit, has stated that while "'storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner, . . . his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud." *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987).

(47) Defendants acted in concert an collusion, one with the other, in an organized scheme wherein, from the beginning, one predicate act after another was committed against Plaintiff in order to establish trust, then use that trust to perpetrate fraud against Plaintiff by systematically making false claims to Plaintiff in order to induce Plaintiff into entering into an express contract that was based on fraud. Plaintiff acted in good faith in all things and with due diligence by only dealing with licensed professionals. In as much as all actors were professionals, duly licensed by the state and federal governments and all governed by the relevant consumer protection laws, Plaintiff had cause to expect good faith and fair dealings from said licensed professionals.

     c.  "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989); [\*15]  Rest.2d Contracts § 205*. A mortgage broker has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773. Further, In Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917.*

     d.  "A person who provides brokerage services to a borrower in a covered loan transaction by soliciting lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this fiduciary duty [is owed] to the consumer regardless of whom else the broker may be acting as an agent for . . . The fiduciary duty of the broker is to deal with the consumer in good faith. If the broker knew or should have known that the Borrower will or has a likelihood of defaulting ... they have a fiduciary duty to the borrower not to place them in that loan." *(California Department of Real Estate, Section 8: Fiduciary Responsibility, www.dre.ca.gov)*.

(48) Plaintiff had no notice of wrong doing until the improprieties of the real estate market were finally made public in the popular media.

More Definite Statement             11 of 25

e.  Other courts have indicated the one-year limitations period commences when the plaintiff is placed on inquiry notice, unless the plaintiff can show the actual exercise of reasonable diligence to discover the fraud. If the plaintiff can show the exercise of such diligence, the limitations period begins to run when the plaintiff actually discovers the facts underlying the alleged fraud. If, however, the plaintiff cannot show such actual diligence, constructive knowledge of the fraud is imputed to the plaintiff as of the date of inquiry notice. For example, in *Dodds v. Cigna Securities, Inc., 12 F.3d 346 (2d Cir. 1993)*, the Second Circuit stated that "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry." *Id. at 350*. The Dodds court further stated that the doctrine of "equitable tolling will stay the running of the statute of limitations only so long as the plaintiff has exercised reasonable care and diligence in seeking to learn the facts which would disclose [**35] fraud." Id. (internal quotations omitted). *Sterlin v. Biomune Sys., 154 F.3d 1191, 1201*.

(49) When Plaintiff became aware of potential fraud by the licensed professionals Plaintiff had been induced to trust, Plaintiff made due diligent inquiry and discovered the fraud complained of herein.

f.  Plaintiff exercised due diligence and the time limitations in the Truth in Lending Act should be tolled so that the intent of the Legislature may be realized. The Seventh Circuit, essentially merging the inquiry notice and reasonable diligence standards into one governing standard, has indicated that a plaintiff is not put on inquiry notice until the plaintiff reasonably should have discovered the fraud. See Marks v. CDW Computer Ctrs., Inc., 122 F.3d 363, 368 (7th Cir. 1997) ("Inquiry notice does not begin to run unless and until the investor is able, with the exercise of reasonable diligence (whether or not actually exercised), to ascertain the information needed to file suit."); *see also* Law v. Medco Research, Inc., 113 F.3d 781, 785 (7th Cir. 1997) ("The plaintiff gets a year after he learned or should have learned the facts that he must know to know that he has a claim."). An earlier Seventh Circuit case, however, rejected the plaintiff's argument that "in spite of reasonable diligence, it could not discover the facts underlying the defendants' fraud" and held that the one-year limitations period began to run once the plaintiff was placed on inquiry notice of the possibility of fraud. Whirlpool Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 610 & n.3 (7th Cir. 1995). Sterlin v. Biomune Sys., 154 F.3d 1191, 1201.

(50) In the alternative, the acts as alleged against Defendants amount to criminal fraud in that, in a scheme to deceive and mislead Plaintiff, Defendants, by sham and trickery, induced Plaintiff into entering into a predatory loan contract wherein Plaintiff was charged amounts not allowed by law. Defendants, in perpetrating the above referenced predicate acts toward their carefully crafted criminal conspiracy, relied on the trust engendered by the laws intended to protect Plaintiff and others similarly situated from just the sort of abuse visited on Plaintiff.

(51) Plaintiff alleges a scheme of fraud and, therefore, upon proof at trial, Plaintiff has a right to seek common law equitable recoupment.

## *TENDER BY SETOFF*

(52) Plaintiff has alleged a conspiracy on the part of all defendants which gives Plaintiff a claim against all defendants equally as coconspirators, Plaintiff has an equitable right to claim tender by setoff against the claims herein made against defendants.

## *LIEN IS VOID*

(53) Lender sold the security instrument immediately after closing and received consideration in an amount in excess of the lien held by Lender. Since Lender retained the lien document upon the sale of the security instrument, Lender separated the lien from said security instrument, creating a fatal and irreparable flaw. When Lender received consideration while still holding the lien and said consideration was in excess of the amount of the lien, Lender was in a position such that he could not be harmed and could not gain standing to enforce the lien. The lien was, thereby, rendered void.

(54) Since the separation of the lien from the security instrument creates such a considerable concern, said separation certainly begs a question: "Why would the Lender retain the lien when selling the security instrument?" When you follow the money, the answer is clear. The Lender will hold the lien for three years, then file and IRS Form 1099a and claim the full amount of the lien as abandoned funds and deduct the full amount from Lender's tax liability, thereby, receiving consideration a second time. Later, in the expected eventuality of default by Plaintiff, Lender then claimed to transfer the lien to the holder of the security, however, the lien once satisfied, does not gain authority just because the holder, after receiving consideration, decides to transfer it to someone else.

## **CLAIM TO QUIET TITLE.**

(55) Plaintiff properly averred a claim to quiet title. Plaintiff has set forth facts concerning the title interests of the subject property. Moreover, as shown above, Plaintiff's claims for rescission and fraud are meritorious. As such, Plaintiff's bases for quiet title are meritorious as well.

(56) Any claim the lender has or would have are without any right, and Lenders have no title, estate, lien, or interest in the Subject Property in that purported power of sale contained in the Deed of Trust is of no force or effect because Lenders' security interest in the Subject Property has been rendered void and that the Lenders are not the holder in due course of the Promissory Note. Moreover, because Plaintiff properly pled all Lenders' involvement in a the fraudulent scheme, all Lenders are liable for the acts of its co-conspirators,

> "a Plaintiff is entitled to damages from those Lenders who concur in the tortious scheme with knowledge of its unlawful purpose." Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 157 Cal. Rptr. 392, 598 P.2d 45 (1979); Novartis Vaccines and Diagnostics, Inc. v. Stop Huntingdon Animal

Cruelty USA, Inc., 143 Cal. App. 4th 1284, 50 Cal. Rptr. 3d 27 (1st Dist. 2006); Kidron v. Movie
Acquisition Corp., 40 Cal. App. 4th 1571, 47 Cal. Rptr. 2d 752 (2d Dist. 1995).

(57) If defendants are granted standing absent proof of a complete chain of custody of the security
instrument and lien, the court will create a break in the chain of title that will render the property
uninsurable.  This will create a level of insecurity in the real estate market that could well haunt the public
and the courts for generations.

## CLAIMS TO NUMEROUS TO INCLUDE IN COMPLAINT

(58) Plaintiff is prepared to produce evidence of fraudulent intent and specific violations of
standing law too numerous to include in the complaint as Plaintiff is limited to a certain number of pages.
After discovery, at trial, Plaintiff is prepared to produce further proof of the allegations made herein.

## CAUSES OF ACTION
### *BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING*

(59) Plaintiff properly pled Defendants violated the breach of implied covenant of good faith and fair dealing.
"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its
enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989);* [*15]  Rest.2d
Contracts § 205. A mortgage broker has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773.*
Further, In *Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917,* the court stated:

> In the area of insurance contracts the covenant of good faith and fair dealing has taken on a
> particular significance, in part because of the special relationship between the insurer and the insured.
> The insurer, when determining whether to settle a claim, must give at least as much consideration to
> the welfare of its insured as it gives to its own interests. . . The standard is premised on the insurer's
> obligation to protect the insured's interests . . . *Id. at 937.*

(60) Likewise, there is a special relationship between a broker and borrower. "A person who provides
brokerage services to a borrower in a covered loan transaction by soliciting lenders or otherwise negotiating a
consumer loan secured by real property, is the fiduciary of the consumer...this fiduciary duty [is owed] to the
consumer regardless of whom else the broker may be acting as an agent for . . . The fiduciary [*16]  duty of the
broker is to deal with the consumer in *good faith.* If the *broker knew or should have known that the Borrower will
or has a likelihood of defaulting ... they have a fiduciary duty to the borrower not* to place them in that loan."
(California Department of Real Estate, *Section 8: Fiduciary Responsibility,* www.dre.ca.gov). [*Emphasis Added*].

(61) All Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when
Defendants: (1) Failed to provide all of the proper disclosures; (2) Failed to provide accurate Right to Cancel
Notices; (3) Placed Plaintiff into the current loan product without regard for other more affordable products; (4)
Placed Plaintiff into a loan without following proper underwriting standards; (5) Failed to disclose to Plaintiff that
she was going to default because of the loan being unaffordable; (6) Failed to perform valid and /or properly

documented substitutions and assignments so that Plaintiff could ascertain her rights and duties; and (7) Failed to respond in good faith to Plaintiff's request for documentation of the servicing of her loan and the existence and content of relevant documents. Additionally, Defendants breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants initiated foreclosure proceedings even without the right under an alleged power of sale because the purported assignment was not recorded and by willfully and knowingly financially profiting from their malfeasance. Under the Covenant of Good Faith and Fair Dealing, neither party is allowed to do anything which will injure the rights of the other party to receive benefits of the agreement. *(Andrews v. Mobile Aire Estates 125 Cal. App. 4th 578, 589 (2005), quoting Gruenberg v Aetna Ins. Co. 9 Cal. 3d 566, 573 (1973).)*

(62) Under the law, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *(Marsu, B.V. v Walt Disney Co., 185 F 3d. 932, 937 (9th Cir. 1999), quoting Carma Developers, Inc v Marathon Dev. Cal., Inc., 2 Cal 4th 342, 371 (1992).)* Plaintiff sufficiently placed Defendants on notice of Plaintiff's allegations.

## BREACH OF FIDUCIARY DUTY by Broker

(63) Plaintiff incorporates the above allegations as though fully restated herein. Broker was an agent of the Plaintiff, by express and implied contract and by operation of law. Plaintiff engaged Defendant as their agent for obtaining a loan to purchase their home. Pursuant to the previously mentioned settlement statement fees, Plaintiff paid Broker monies for services from the proceeds of the loan. As Plaintiff's agent Broker owed a fiduciary duty to Plaintiffs to act primarily for their benefit, to act with proper care and diligence, and not to make a personal profit from the agency at the expense of his principal, the Plaintiff. As Plaintiff's agent, the Broker owed a duty of loyalty to Plaintiffs and a duty to deal fairly with them at all times. Broker, willfully and intentionally breached his fiduciary duty of loyalty to Plaintiffs including but not limited to the following to wit:

a. Obtained mortgage loans with unfavorable terms;

b. Misrepresenting the terms of the loan and the ability to refinance the loan at a later date to gain a profit from the sale of the loan in question;

c. By accepting funds from Lender in the form of kickbacks in return for referring Plaintiff to the other Lender;

d. By arranging loans at excessive interest rates and onerous terms as applied to the ability of this Plaintiffs to afford;

(64). Plaintiffs have been damaged because of Broker's breaches and as such are entitled to actual damages.

(65) . The actions of Broker in deliberately committing a breach of fiduciary duty authorize the imposition of punitive damages in that they show willful misconduct, malice, fraud, wantonness,

oppression, or that entire want of care which raise the presumption of a conscious indifference to consequences.

(66) WHEREFORE, Plaintiffs respectfully requests this honorable court enter judgment against Defendant for monetary and punitive damages together with actual attorney fees and costs so wrongfully sustained.

## *BREACH OF FIDUCIARY DUTY BY APPRAISER*

(67) Plaintiff incorporates the above allegations as though fully restated herein. Broker was an agent of the Plaintiff, by express and implied contract and by operation of law. Plaintiff engaged Appraiser as their agent for obtaining a loan to purchase their home. Pursuant to the previously mentioned settlement statement fees, Plaintiff paid Appraiser monies for services from the proceeds of the loan. As Plaintiff's agent Appraiser owed a fiduciary duty to Plaintiffs to act primarily for their benefit, to act with proper care and diligence, and not to make a personal profit from the agency at the expense of his principal, the Plaintiff. As Plaintiff's agent, Appraiser owed a duty of loyalty to Plaintiffs and a duty to deal fairly with them at all times. Appraiser, willfully and intentionally breached his fiduciary duty of loyalty to Plaintiffs including but not limited to the following to wit:

a. Obtained mortgage loans with unfavorable terms;

b. Misrepresenting the terms of the loan and the ability to refinance the loan at a later date to gain a profit from the sale of the loan in question;

c. By accepting funds from Lender in the form of kickbacks in return for referring Plaintiff to the other Lender;

d. By arranging loans at excessive interest rates and onerous terms as applied to the ability of this Plaintiffs to afford;

(68) Plaintiffs have been damaged because of Appraiser's breaches and as such are entitled to actual damages.

(69) The actions of Appraiser in deliberately committing a breach of fiduciary duty authorize the imposition of punitive damages in that they show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raise the presumption of a conscious indifference to consequences.

(70) WHEREFORE, Plaintiffs respectfully requests this honorable court enter judgment against Defendant for monetary and punitive damages together with actual attorney fees and costs so wrongfully sustained.

## *BREACH OF FIDUCIARY DUTY BY LENDER*

(71) Plaintiff incorporates the above allegations as though fully restated herein. Broker was an agent of the Plaintiff, by express and implied contract and by operation of law. Plaintiff engaged Lender as their agent for obtaining a loan to purchase their home. Pursuant to the previously mentioned settlement statement fees, Plaintiff paid Lender monies for services from the proceeds of the loan. As Plaintiff's agent Lender owed a fiduciary duty to Plaintiffs to act primarily for their

benefit, to act with proper care and diligence, and not to make a personal profit from the agency at the expense of his principal, the Plaintiff. As Plaintiff's agent, Lender owed a duty of loyalty to Plaintiffs and a duty to deal fairly with them at all times. Lender, willfully and intentionally breached his fiduciary duty of loyalty to Plaintiffs including but not limited to the following to wit:

a. Obtained mortgage loans with unfavorable terms;

b. Misrepresenting the terms of the loan and the ability to refinance the loan at a later date to gain a profit from the sale of the loan in question;

c. By accepting funds from Lender in the form of kickbacks in return for referring Plaintiff to the other Lender;

d. By arranging loans at excessive interest rates and onerous terms as applied to the ability of this Plaintiffs to afford;

(72) Plaintiffs have been damaged because of Lender's breaches and as such are entitled to actual damages.

(73) The actions of Lender in deliberately committing a breach of fiduciary duty authorize the imposition of punitive damages in that they show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raise the presumption of a conscious indifference to consequences.

(74) WHEREFORE, Plaintiffs respectfully requests this honorable court enter judgment against Defendant for monetary and punitive damages together with actual attorney fees and costs so wrongfully sustained.

## *BREACH OF FIDUCIARY DUTY BY CLOSING AGENT*

(75) Plaintiff incorporates the above allegations as though fully restated herein. Broker was an agent of the Plaintiff, by express and implied contract and by operation of law. Plaintiff engaged Closing Agent as their agent for obtaining a loan to purchase their home. Pursuant to the previously mentioned settlement statement fees, Plaintiff paid Closing Agent monies for services from the proceeds of the loan. As Plaintiff's agent Closing Agent owed a fiduciary duty to Plaintiffs to act primarily for their benefit, to act with proper care and diligence, and not to make a personal profit from the agency at the expense of his principal, the Plaintiff. As Plaintiff's agent, Closing Agent owed a duty of loyalty to Plaintiffs and a duty to deal fairly with them at all times. Closing Agent, willfully and intentionally breached his fiduciary duty of loyalty to Plaintiffs including but not limited to the following to wit:

a. Obtained mortgage loans with unfavorable terms;

b. Misrepresenting the terms of the loan and the ability to refinance the loan at a later date to gain a profit from the sale of the loan in question;

c. By accepting funds from Closing Agent in the form of kickbacks in return for referring Plaintiff to the other Closing Agent;

d. By arranging loans at excessive interest rates and onerous terms as applied to the ability of this Plaintiffs to afford;

(76) Plaintiffs have been damaged because of Closing Agent's breaches and as such are entitled to actual damages.

(77) The actions of Closing Agent in deliberately committing a breach of fiduciary duty authorize the imposition of punitive damages in that they show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raise the presumption of a conscious indifference to consequences.

(78) WHEREFORE, Plaintiffs respectfully requests this honorable court enter judgment against Defendant for monetary and punitive damages together with actual attorney fees and costs so wrongfully sustained.

## *CAUSE OF ACTION - NEGLIGENCE/NEGLIGENCE PER SE*

(79) Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every allegation contained in all of the paragraphs of the General Allegations and Facts Common to All Causes of Action as though the same were set forth herein.

(80) Defendants owed a general duty of care with respect to Plaintiffs, particularly concerning their duty to properly perform due diligence as to the loans and related transactional issues described hereinabove.

(81) In addition, Defendants owed a duty of care under TILA, HOEPA, **RESPA** and the Regulations X and Z promulgated there under to, among other things, provide proper disclosures concerning the terms and conditions of the loans they marketed, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, and to avoid paying undue compensation such as "yield spread premiums" to mortgage Agents and loan officers.

(82) Defendants knew or in the exercise of reasonable care should have known, that the loan transactions involving Plaintiff and other persons similarly situated were defective, unlawful, violative of federal and state laws and regulations, and would subject Plaintiff to economic and non-economic harm and other detriment.

(83) Plaintiff is among the class of persons that TILA, HOEPA, **RESPA** and the Regulations X and Z promulgated there under were intended and designed to protect, and the conduct alleged against Defendants, and each of them is the type of conduct and harm which the referenced statutes and regulations was designed to deter.

(84) As a direct and proximate result of Defendant's negligence, Plaintiff suffered economic and non-economic harm in an amount to be shown according to proof at trial.

(85) WHEREFORE, Plaintiffs respectfully requests this honorable court enter judgment against Defendant for monetary and punitive damages together with actual attorney fees and costs so wrongfully sustained.

## COMMON LAW FRAUD

(86) Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every allegation contained in all of the paragraphs of the General Allegations and Facts Common to All Causes of Action as though the same were set forth herein.

(87) If any Defendants misrepresentations made herein were not intentional, said misrepresentations were negligent. When the Defendants made the representations alleged herein, he/she/it had no reasonable ground for believing them to be true. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Plaintiff would so act.

(88) Plaintiff is informed and believes that Defendants et al, facilitated, aided and abetted various Defendants in their negligent misrepresentation, and that various Defendants was negligent in not implementing procedures such as underwriting standards oversight that would have prevented various Defendants from facilitating the irresponsible and wrongful misrepresentations of various Defendants.

(89) Plaintiff is informed and believes that Defendants acted in concert along with other others named herein in promulgating false representations to cause Plaintiff to enter into the LOAN without knowledge or understanding of the terms thereof.

(90) As a proximate result of the negligent misrepresentations of Defendants as herein alleged, the Plaintiff sustained damages, including monetary loss, emotional distress, loss of credit, loss of opportunities, attorney fees and costs, and other damages to be determined at trial. As a proximate result of Defendants' breach of duty and all other actions as alleged herein, Defendants has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and mental and physical pain and anguish, all to Plaintiff's damage in an amount to be established at trial in excess of $609,273.66.

(91) WHEREFORE, Plaintiffs respectfully requests this honorable court enter judgment against Defendant for monetary and punitive damages together with actual attorney fees and costs so wrongfully sustained.

## FRAUD BY NON-DISCLOSURE

(92) Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every allegation contained in all of the paragraphs of the General Allegations and Facts Common to All Causes of Action as though the same were set forth herein.

(93) Defendants made proactive statements of fact to Plaintiff giving partial disclosure Defendants intended that Plaintiff would rely on in making a decision to enter into an express contract for the

purchase of the property. By said proactive statements intended as partial disclosure, Defendants invoked a duty to full disclosure. Defendants failed to give full disclosure to Plaintiff. Plaintiff did not have equal access to, or equal opportunity to discover information upon which Defendants gave partial disclosure. Plaintiff relied on the disclosure given by Defendants as being complete. Plaintiff was harmed by the lack of full disclosure by Defendants.

(94) The elements of a fraudulent omissions claim are: (1) concealment or nondisclosure of a material fact, (2) knowledge of falsity (scienter), (3) intent to defraud, (4) justifiable reliance, and (5) resulting damages. *Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (2006). See also Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996).* [*48] While certain fraud claims are subject to Fed. R. Civ. P. 9(b), Plaintiffs need only plead their claim pursuant to Fed. R. Civ. P. 8(a). A fraud by omission claim does not need to meet the requirements of Rule 9(b) because it is based on the ***absence*** of representations, rather than on representations that were made and can be detailed in a pleading. *See, e.g., Falk v. GMC, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)* ("plaintiff in a fraud by omission suit will not be able to specify the time, place and specific content of an omission as precisely as would a plaintiff in a false representation claim... [A] fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim."). Regardless, Plaintiffs have pled their fraudulent omissions claim with particularity.

(95) At this point, all Plaintiff is required to do is state the factual basis for his Fraud claim pursuant to Rule 9(b). To meet the requisite level of specificity, Rule 9(b) only requires identification of circumstances constituting fraud, including the time, place, and nature of the alleged fraudulent activities, such that a defendant can prepare adequate answer to allegations. *(Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977).)* A pleading is sufficient under Rule 9(b) if it identifies circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. *(Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993), quoting Gottreich v. SF Inv. Corp., 552 F.2nd 866 (9th Cir. 1977).)* However, Rule 9(b) does not require nor make legitimate pleading of detailed evidentiary matter. *(Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973).)* Rule 9(b) may be relaxed with respect to matters within opposing party's knowledge. *Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).)* Under Rule 9(b), it is also not necessary, once complaint adequately identified particular defendant with category of defendants allegedly responsible for some continuing course of conduct, to plead more than group conduct of defendants. *(In re Equity Funding Corp. of Am. Sec. Litig., 416 F.Supp. 161, 181 (C.D. Cal. 1976).)* Moreover, in cases where fraud was conducted over several years, a plaintiff is not required to allege each date of each defendant's fraudulent conduct since such requirement would defeat the purpose of Rule 8 requiring that pleading be short, plain, and in concise statements.

*CAUSE OF ACTION VIOLATION OF TRUTH IN LENDING ACT 15 U.S.C. §1601 ET SEQ*

(96) Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every allegation contained in all of the paragraphs of the General Allegations and Facts Common to All Causes of Action as though the same were set forth herein.

(97) This consumer credit transaction was subject to the Plaintiff's right of rescission as described by *15 U.S.C. § 1635*(a) and Regulation Z § 226.23 (12 C.F.R. § 226.23).

(98) More particularly, the same Defendants violated *15 U.S.C. § 1635*(a) and Regulation Z § 226.23(b) with regards to the purported Notice of Right to Cancel. As a consequence of this action, the Notice of Right to Cancel documentation was not provided to Plaintiff or if furnished, to Plaintiff it failed to: Correctly identify the transaction; Clearly and conspicuously disclose the Plaintiff's right to rescind the transaction three days after delivery of all required disclosures; Clearly and conspicuously disclose how to exercise the right to rescind the transaction, with a form for that purpose; Clearly and conspicuously disclose the effects of rescission; Clearly and conspicuously disclose the date the rescission period expired.

(99) Furthermore, Plaintiff is informed and believes that Defendants violated TILA at the time of origination because, among other things: Multiple GFE's used to mislead and confuse borrower about actual terms of Notes; over $2,400 in yield spread premium paid outside closing and additional unknown amounts in YSP/POC fees.

(100) Plaintiff is informed and believes that Defendant's violation of the provisions of law rendered the credit transaction null and void, invalidates Defendant's claimed interest in the Subject Property, and entitles Plaintiff to damages as proven at trial.

(101)Defendant Quicken contends that Plaintiff's TILA damages and rescission claims are time barred. (MTD, 5:22). It is a well-established rule in California that the doctrine of equitable tolling suspends the statute of limitations until borrowers discover or had reasonable opportunity to discover the fraud or the non-disclosures that form the basis of a TILA action. (*King v. California, 784 F.2d 910, 915 (9th Cir. 1986);* see also, *Eubanks v. Liberty Mortgage Banking Ltd., 976 F. Supp. 171 (9th Cir. 2003)* (noting that TILA claims are subject to equitable tolling in instances of fraud).) District courts have discretion to adjust the limitations period in cases where the purpose of TILA would be frustrated otherwise. (See, *Pelayo v. Home Capital Funding, 2009 U.S. Dist. LEXIS 44453,* \*14-16 (S.D. Cal. May 22, 2009).) "The motion [to dismiss] should be granted 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" (*Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008),* [\*19] citing *Durning v. First Boston*

More Definite Statement                                                                              21 of 25

*Corp., 815 F.2d 1265, 1268 (9th Cir. 1987);* see also, *Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003-04 (9th Cir. 2006)* (holding that it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss if equitable tolling is at issue, given that the applicability of equitable tolling depends on matter outside of the pleadings and Court's review is limited to the complaint).) n1

> n1 The Plascencia court further held that the issue of equitable tolling must be considered when "the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." (Id., citing *Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993).)*

(102) Here, Plaintiffs pled that the facts surrounding loan transaction subject to this litigation were purposefully hidden and continue to be hidden to this day. In California, the statute of limitation runs from actual discovery. (See, *Katz v. Bank of California, 640 F.2d 1024, 1025 (9th Cir. 1981)* citing *NLRB v. Don Burgess Constr. Corp., 596 F.2d 378, 382-383 (9th Cir. 1979).)* TILA does not permit constructive disclosure of terms, but specifically provides for actual, express disclosures to be made to the borrower by the creditor prior to and upon closing of the loan. (See, *15 U.S.C. § 1601* et seq.) Here, Defendants failed to provide the requisite TILA disclosures to the Plaintiffs at the inception of the loan. Plaintiff, by engaging licensed professionals to assist Plaintiff in the procurement of the note exercised due diligence. It was only after news reports of predatory lending practices came to the attention of Plaintiff that Plaintiff discovered concealment of TILA violations by Defendants within the past year, when Plaintiff engaged the services of a professional to examine the loan for improprieties.    As such, Plaintiff's allegations adequately state the applicability of the equitable tolling doctrine. Thus, Plaintiff's TILA claims [*21]  are not barred.  *2009 U.S. Dist. Ct. Motions 875682; 2010 U.S. Dist. Ct. Motions LEXIS 7191*

## *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

(103) The conduct committed by Defendants, driven as it was by profit at the expense of increasingly highly leveraged and vulnerable consumers who placed their faith and trust in the superior knowledge and position of Defendants, was extreme and outrageous and not to be tolerated by civilized society. Defendants either knew that their conduct would cause Plaintiff to suffer severe emotional distress, or acted in conscious and/or reckless disregard of the probability that such distress would occur.

(104) Plaintiff did in fact suffer severe emotional distress as an actual and proximate result of the conduct of Defendants as described hereinabove. As a result of such severe emotional distress, Plaintiff suffered economic and non economic harm and detriment, all to be shown according to proof at trial of this matter. Plaintiff demands that Defendants provide Plaintiff with release of lien on the lien signed by Plaintiff and secure to Plaintiff quite title; Plaintiff demands Defendants disgorge themselves of all enrichment received from Plaintiff as payments to Defendants based on the fraudulently secured

promissory note in an amount to be calculated by Defendants and verified to Plaintiff; Plaintiff further demands that Defendants pay to Plaintiff an amount equal to the amount Defendants intended to defraud Plaintiff of which amount Plaintiff calculated to be equal to $609,273.66

## *CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICES*

(105) The UCL prohibits "any unlawful", unfair or fraudulent" business practice. (Cal. Bus. & Prof. Code § 17200.) A practice is unfair if the court determines that the impact of the practice or act on its alleged victim outweighs the reasons, justifications, and motives of the alleged wrongdoer. *(Podolsky v. First Healthcare Corp.., 50 Cal. App. 4th 632, 647 (1996).)* A practice is fraudulent if the members of the public are likely to be deceived by the practice. *(Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000).)* The statute "has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices that specifically prescribed by any other law.'" *(Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122, [\*23] (9th Cir. 2009), quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002).)*

(106) Plaintiff sufficiently plead numerous violations of various consumer protection laws to establish a claim under California Business and Professions Code 17200.

## SUFFICIENCY OF PLEADING

(107) Plaintiff has sufficiently pled that relief can be granted on each and every one of the Complaint's causes of action. Federal Rule of Civ. Procedure 12(b)(6) provides for dismissal if a Plaintiff fails to state a claim upon which relief can be granted. A complaint should not be dismissed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401.* "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiff." *Argabright v. United States, 35 F.3d 1476, 1479 (9th Cir. 1996).*

(108) The Complaint includes a "short, plain statement, of the basis for relief." Fed. Rule Civ. Proc. 8(a). The Complaint contains cognizable legal theories, sufficient facts to support cognizable legal theories, and seeks remedies to which Plaintiff is entitled. *Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988); King v. California, 784 F.2d 910, 913 (9th Cir. 1986).* Moreover, the legal conclusions in the Complaint can and should be drawn from the facts alleged, and, in turn, the court should accept them as such. *Clegg v. Cult Awareness Network, 18 F.3d 752* (9th Cir, 1994). Lastly, Plaintiff's complaint contains claims and has a probable validity of proving a "set of facts" in support of their claim entitling them to relief. *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401.* Therefore, relief as requested herein should be granted.

**PRAYER**

(109) WHEREFORE, Plaintiff prays for judgment against the named Defendants, and each of them, as follows:

For quite title to Property;

For rescission of the loan contract and restitution by Defendants to Plaintiff according to proof at trial;

For disgorgement of all amounts wrongfully acquired by Defendants according to proof at trial;

For actual monetary damages in the amount of S$609,273.66;

For pain and suffering due to extreme mental anguish in an amount to be determined at trial.

For pre-judgment and post-judgment interest according to proof at trial;

For punitive damages according to proof at trial in an amount equal to $1,827,820.98;

For attorney's fees and costs as provided by statute; and,

For such other relief as the Court deems just and proper.

**Respectfully**

Howard J. Willis

**VERIFICATION**

I, Howard J. Willis, do swear and affirm that all statements made herein are true and accurate, in all respects, to the best of my knowledge.

Nov. 1, 2010

Howard J. Willis
2525 County Road 218
Cheyenne, WY   82009

The Person above, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this document and acknowledged to me that he/she executed the same in his authorized capacity and that by his signature on this instrument who is the person who executed this instrument.
I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

**NOTARY PUBLIC IN AND FOR
THE STATE OF FLORIDA**

Notary

More Definite Statement

24 of 25

## CERTIFICATE OF SERVICE

I, Howard    Willis , do swear and affirm that on November 1st 2010, I have served a signed copy of this
Response to Rule 12 motion & Motion For the Amended Complaint to any and all defendants by way of
U.S.P.S. regular mail to:

John M. Kuker
James M. Peterson
Romsa & Kuker LLC
2123 Pioneer Ave.
Cheyenne, Wyoming  82001

Howard J. Willis
2525 County Road 218
Cheyenne  WY 82009